**UNITED STATES of America, Appellee,**

v.

**Philip LUBRANO, Appellant.**

**No. 254, Docket 75–1158.**

United States Court of Appeals, Second Circuit.

Argued Sept. 26, 1975.

Decided Dec. 30, 1975.

---

634

Lawrence Hochheiser, Brooklyn, N. Y. (Hochheiser & Cohen, Brooklyn, N. Y., of counsel, Kenneth J. Aronson, Brooklyn, on the brief), for appellant.

John Timbers, New York City (Paul J. Curran, U. S. Atty., S. D. N. Y., John D. Gordan, III, Asst. U. S. Atty., of counsel), for appellee.

Before MOORE, MULLIGAN and VAN GRAAFEILAND, Circuit Judges.

MOORE, Circuit Judge:

The indictment charged in count one that Philip Lubrano ("Lubrano") and co-defendants Anthony Rizzo ("Rizzo") and Victor Vitale ("Vitale") conspired to distribute narcotics, in violation of 21 U.S.C. § 846; count two charged that Vitale distributed 102 grams of cocaine on May 11, 1973; and count three charged that Lubrano distributed approximately 112.2 grams of cocaine on August 20, 1973, both in violation of 21 U.S.C. § 841. The jury convicted Vitale of counts one and two, convicted Rizzo of count one, and convicted Lubrano of count one but acquitted him of count three. Appellant Lubrano was sentenced to five years imprisonment and three years special parole and was enlarged on bail pending this appeal.

Appellant asserts that evidentiary errors, improper communication with jurors during the trial, and insufficient evidence require reversal. In order to properly assess the latter argument, we first review the evidence that was presented to the jury, viewing it as we must, in a light most favorable to the government. *United States v. McCarthy*, 473 F.2d 300, at 302 (2d Cir. 1972).

On May 1, 1973, Tony Finn ("Finn"), a government informant, talked with Rizzo and Vitale and later bought an ounce of cocaine from Vitale for $800, which amount law enforcement officers had previously given Finn. In the middle of May, Finn consummated another purchase from Vitale. During the negotiations Vitale told Finn that he would go "uptown" to obtain the narcotic, and in fact, Vitale drove north and entered Lubrano's store on East 56th Street. During Vitale's visit he briefly left the store several times to place calls from a phone in the nearby Gion Bar.

Against this background of initially limited interaction the principal evidence inculpating Lubrano stands in sharp relief. On August 20, 1973, after government agents gave Finn $3,750, he drove to and entered the Gion Bar where he spoke with Rizzo. Shortly afterward, Lubrano entered the bar and Rizzo introduced him to Finn. Minutes later Lubrano and Finn left the bar, walked around the corner to the Gaiety East Luncheonette and entered it together. Although there is no direct evidence of what happened once they were inside, when Finn left the luncheonette three to five minutes later, there was a bulge in the left front pocket of his clothing, and he later gave government agents a package containing 112.2 grams of cocaine.

Finally, on October 4, 1973, Lubrano entered an apartment building near his jewelry store and Finn followed shortly thereafter. Fifteen to twenty minutes later, Finn left the building and at a predetermined spot met with government agents who gave him $6,400 and told him to purchase a quarter kilogram of cocaine. Finn returned and re-entered the apartment building. His subsequent rendezvous with and search by government agents disclosed that after leaving the building he had the cocaine but no longer the money he had earlier received.

## SUFFICIENCY OF EVIDENCE

Appellant, placing particular emphasis on *United States v. Vilhotti*, 452 F.2d 1186 (2d Cir. 1971); *cert. denied*, 406 U.S. 947, 92 S.Ct. 2051, 32 L.Ed.2d 335 (1972); and *United States v. Cimino*, 321 F.2d 509 (2d Cir. 1963); *cert. denied*, 375 U.S. 974, 84 S.Ct. 491, 11 L.Ed.2d 418 (1964), argues that the evidence is insufficient as a matter of law because, at best, it proves only that he was associated with the co-conspirators or merely present at the scene of their crimes.

636

Finn, the key participant, was no longer living at the time of the trial and therefore, most of the evidence adduced against Lubrano was circumstantial. However, after reviewing the facts and permissible inferences therefrom, we conclude that the evidence was sufficient for a jury to find appellant guilty beyond a reasonable doubt. The events of any particular day in isolation from all the rest may be inconclusive, but taken together, the jury could properly have found that Rizzo led Finn to Vitale, who supplied him with cocaine, that Vitale obtained the cocaine from Lubrano, and that Lubrano dealt directly with Finn on August 20th and October 4th.

We have examined the cases cited by appellant which discuss the sufficiency of evidence, but although we do not disagree with those decisions or their rationale, they are of little assistance. In *Vilhotti* the government argued that two defendants' mere presence in a garage containing stolen goods was sufficient to sustain their convictions of receiving and possessing stolen goods, and the court reversed. In the instant case, the jury could have found that appellant was not merely present, but was an active participant. Considering the events of August 20th and October 4th as a whole, the jury properly could have concluded beyond a reasonable doubt that Lubrano twice sold Finn cocaine.

Appellant also relies on *Cimino* for the proposition that a mere meeting is not evidence of a conspiracy where no witness overheard the defendants' conversations or saw anything pass from one to the other. *Cimino's* affirmance was predicated on the additional evidence of

an admission by one of the defendants. But although no one saw or heard what was said or done by Lubrano or Finn inside the luncheonette and apartment building, there was evidence that cocaine had passed "from one to the other". When Finn left the luncheonette his left pocket was bulging, and there is no evidence that he placed anything in that pocket before reaching the predetermined rendezvous point where a search by government agents yielded cocaine. The same is true of the October 4th apartment building transaction. These facts in the context of the additional circumstantial proof render any innocent explanation fanciful. Even if an innocent explanation of Lubrano's actions was plausible, we note in passing the settled law in this circuit that, to be sufficient as a matter of law, circumstantial evidence need not exclude all possible inferences but those of guilt. *United States v. Woodner,* 317 F.2d 649, 651 (2d Cir.), *cert. denied,* 375 U.S. 903, 84 S.Ct. 192, 11 L.Ed.2d 144 (1963). Questions of sufficiency of the evidence are often *sui generis.* The appropriate determination varies with the particular facts *sub judice.* In this case those facts were sufficient as a matter of law for the jury to convict appellant of conspiracy to distribute narcotics.[1]

## EVIDENTIARY RULINGS

Appellant also asserts as error several evidentiary rulings concerning the testimony of Government Agent Peterson, who supervised and directed Finn's activities. First, appellant argues that the reception of Peterson's testimony which contained his instructions[2] to

1. Appellant also suggests that his acquittal of the substantive count precludes reliance upon facts relevant to that count in evaluating the sufficiency of the evidence as to the conspiracy count. This argument has been raised repeatedly and consistently rejected. *See, e. g., United States v. Zane,* 495 F.2d 683 (2d Cir.), *cert. denied,* 419 U.S. 895, 95 S.Ct. 174, 42 L.Ed.2d 139 (1974), and cases cited therein at 690. The rule of law articulated in *Zane* preserves the integrity of the jury by closing the door on interminable speculation about the jury's motive for any given verdict.

2. Peterson gave these instructions to Finn while Finn was being searched and given money with which to purchase narcotics. An excerpt of the testimony follows:

"Q. Agent Peterson, [in] the middle of August, 1973, what if anything else did you do in connection with this case?
A. I believe it was around August 20th I instructed Mr. Finn to purchase an eighth kilogram of cocaine from an individual known at that time to me only as Philly." (Tr. 260)

\* \* \* \* \* \*

Finn was improper. These instructions frequently linked appellant with Finn's activities, and for this reason appellant asserts they were prejudicial. We disagree. The instructions by the principal, Peterson, to his agent, Finn, immediately preceding Finn's meeting with Lubrano and the other defendants were relevant to aid the jury in understanding the background events leading up to the crimes in question. *United States v. Ruggiero,* 472 F.2d 599, 607 (2d Cir.), *cert. denied,* 412 U.S. 939, 93 S.Ct. 2772, 37 L.Ed.2d 398 (1973); *United States v. Manfredonia,* 414 F.2d 760, 765 (2d Cir. 1969). Although they were inadmissible as proof of the matters asserted, if a limiting instruction had been requested, it might well have been given. *Manfredonia, id.*

■ Appellant also contends that portions of Peterson's testimony should have been stricken on the grounds that Peterson lacked personal knowledge of the events in question and was acting as a conduit for inadmissible hearsay which he couched in narrative terms. In particular, appellant asserts that the reception of the following question and answer on re-direct was reversible error:

"Q. Agent Peterson, what cocaine that has been introduced into evidence during this trial do you attribute to the defendant Lubrano?

\* \* \* \* \* \*

"A. The May 10th and 11th transaction; the August 20th transaction, and the October 4th transaction." (Tr. 466).

"A. Myself and Agent Smith met with Mr. Finn, where we searched him, fitted him with the electronic transmitting device, searched his vehicle—" (Tr. 260)

\* \* \* \* \* \*

"Q. Did you give Mr. Finn any instructions at the time you searched his car?"

\* \* \* \* \* \*

"A. I provided Finn with $3,750 serialized official funds and instructed him to purchase one-eighth kilogram of cocaine from this individual known to me at this time as Philly." (Tr. 264–65)

\* \* \* \* \* \*

Appellant's previous cross-examination of Peterson demonstrated that Peterson's "attribution" testimony was not based on firsthand observation of any sort. *See, e. g.,* Tr. 279–280. Peterson's testimony resulted from hearsay of Finn, and as such it would have been inadmissible absent other factors. *United States v. Borelli,* 336 F.2d 376, 392 (2d Cir. 1964); *cert. denied sub nom. Cinquegrano v. United States,* 379 U.S. 960, 85 S.Ct. 647, 13 L.Ed.2d 555 (1965); 2 Wigmore, Evidence, § 657(a) (1940 ed.). However, appellant opened the door to the reception of Peterson's re-direct testimony by posing a question on cross-examination which was virtually identical to the contested question posed on re-direct:

"Q. And the only cocaine that you can attribute to Mr. Lubrano in this courtroom is cocaine that Mr. Finn gave you?

A. That's correct." (Tr. 386)

In posing this question, appellant's objective may have been to further expose Peterson's lack of firsthand knowledge or observation, but attribution was injected into the case at this point, and the trial judge did not abuse her discretion in permitting a follow-up question on re-direct.

■ Appellant next contends reversible error was committed when the court admitted evidence that informant Finn had been "wired" prior to meeting Lubrano on August 20th and October 4th. He denies that the error was harmless, arguing that on the basis of such testimony the jury may have inferred that

"Q. Agent Peterson, directing your attention to October, 1973, did you do anything else in connection with this case?"

\* \* \* \* \* \*

"A. I met with Mr. Finn just prior to I believe October 4 and instructed him to meet with Mr. Lubrano and agree to purchase a quarter kilogram of cocaine. I subsequently met with Mr. Finn and instructed him to on October 4th, to meet with Mr. Lubrano and determine whether in fact Mr. Lubrano had a quarter kilo of cocaine for immediately [sic] sale." (Tr. 272–73).

government agents received transmissions corroborating the prosecution's theory of the case when in fact the Judge had already ruled such transmissions to be inaudible and, therefore, inadmissible. We disagree with appellant's contention.

The information that recording and transmitting devices had been placed on Finn on August 20, was volunteered in response to questions that did not directly touch upon the excluded recordings, and the government immediately dropped the matter following a brief side-bar. (Tr. 260–265). The testimony did not disclose that tape recordings had been made or what were the purported contents of the tapes. The testimony that recording and transmitting devices had been placed on Finn on October 4th was initially volunteered by Agent Sennett. (Tr. 570). On re-cross, it was explored further by other defense counsel. Once again, no disclosure of the tape contents resulted. In light of these facts, we do not believe that this testimony prejudiced appellant or deprived him of a fair trial.

### INTERFERENCE WITH JURY

■ During a trial recess, the Deputy Marshal undertook to obtain coffee for two jurors. Since he was already guarding a prisoner, he asked Agent Fernandez to fetch it for him. Agent Fernandez, although he did not testify, was present throughout the trial and sat at the prosecution's counsel table. He took two jurors' orders and money, obtained the coffee, and then distributed it to the jurors, explaining which cups contained cream and which were black. Upon discovery of this incident, appellant moved for a mistrial and now argues on appeal that his conviction must be reversed. We do not concur.

This incident was improper and unfortunate. It should not have occurred. *Cf. Remmer v. United States,* 347 U.S. 227, 74 S.Ct. 450, 98 L.Ed. 654 (1954). However, when an unauthorized private communication or contact with a juror during a trial does not relate to a matter pending before a jury, a trial judge's denial of a mistrial motion is not an abuse of discretion absent a showing of prejudice by the defendant. *United States v. Brasco,* 516 F.2d 816 (2d Cir. 1975). On these facts we cannot discern any prejudice suffered by appellant. Nor has appellant suggested unexplored avenues that might prove the contrary. Indeed, after Judge Motley heard two slightly varying descriptions of the same incident, counsel did not request an evidentiary hearing.

■ Appellant has moved for an evidentiary hearing on this appeal. However, the communications with the jurors were totally unrelated to the matters pending at trial, and in the absence of some showing of prima facie prejudice, we decline to grant counsel's motion at this late date. *United States v. Gersh,* 328 F.2d 460, 464 (2d Cir.), *cert. denied,* 377 U.S. 992, 84 S.Ct. 1919, 12 L.Ed.2d 1045 (1964).

The judgment of conviction is affirmed.