**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Scott Edward MEYERS,
Defendant-Appellant.**

**No. 80–5134.**

United States Court of Appeals,
Sixth Circuit.

Argued April 28, 1981.

Decided Feb. 5, 1981.

Rehearing Denied June 18, 1981.

Michael Doddo, Fort Lauderdale, Fla., for defendant-appellant.

James K. Robinson, U. S. Atty., Bay City, Mich., Alan Gershel, Asst. U. S. Atty., Detroit, Mich., for plaintiff-appellee.

Before LIVELY and KENNEDY, Circuit Judges; and HILLMAN, District Judge.*

CORNELIA G. KENNEDY, Circuit Judge.

Appellant Scott Edward Meyers, together with a co-defendant Debbie Feddick, was

* Honorable Douglas W. Hillman, United States District Court for the Western District of Mich-

charged in a two-count indictment with (1) conspiracy to possess with intent to distribute and the distribution of cocaine, a schedule II narcotic substance, in violation of 21 U.S.C. § 841(a)(1) and § 846; and (2) distribution of approximately three ounces of cocaine in violation of 21 U.S.C. § 841(a)(1). The charges against Miss Feddick were dismissed and she was placed on probation in a diversion program. Appellant was convicted by a jury on the conspiracy count, but was acquitted on the distribution count. Meyers appeals urging that the evidence was insufficient to support his conspiracy conviction. He claims that the government at most proved only a buyer-seller relationship between himself and Ben Calvin, the government's principal witness.

On appeal from a criminal conviction, the question is whether the relevant evidence viewed in the light most favorable to the government could be accepted by a reasonably-minded jury as adequate and sufficient to support the conclusion of defendant's guilt beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560, *reh. denied*, 444 U.S. 890, 100 S.Ct. 195, 62 L.Ed.2d 126 (1979); *Brewer v. Overberg*, 624 F.2d 51 (6th Cir. 1980); *Goldman v. Anderson*, 625 F.2d 135 (6th Cir. 1980); *United States v. Warner*, 441 F.2d 821 (5th Cir.), *cert. denied*, 404 U.S. 829, 92 S.Ct. 65, 30 L.Ed.2d 58 (1971). Whether the evidence is direct or circumstantial, the test is whether it would permit the jury to find the defendant guilty beyond a reasonable doubt. *United States v. Cornett*, 484 F.2d 1365 (6th Cir. 1973); *United States v. Ambrose*, 483 F.2d 742 (6th Cir. 1973).

■ The essential elements of conspiracy are: (1) that the conspiracy described in the indictment was willfully formed, and was existing at or about the time alleged; (2) that the accused willfully became a member of the conspiracy; (3) that one of the conspirators thereafter knowingly committed at least one of the overt acts charged in the indictment, at or about the time and place

igan, sitting by designation.

alleged; and (4) that such overt act was knowingly done in furtherance of some object or purpose of the conspiracy as charged. *United States v. Thompson*, 533 F.2d 1006, 1009 (6th Cir.), *cert. denied*, 429 U.S. 939, 97 S.Ct. 353, 50 L.Ed.2d 308 (1976); *Bradford v. United States*, 413 F.2d 467, 470 (5th Cir. 1969); *United States v. Friedman*, 445 F.2d 1076, 1084 (9th Cir.), *cert. denied sub nom., United States v. Jacobs*, 404 U.S. 958, 92 S.Ct. 326, 30 L.Ed.2d 275 (1971).

■ The existence of a criminal conspiracy need not be proven by direct evidence, a common plan may be inferred from circumstantial evidence. *United States v. Luxenberg*, 374 F.2d 241, 250 (6th Cir. 1967).

The major figures in this conspiracy are appellant, Scott Edward Meyers, a pilot for a scheduled airlines, Debbie Feddick, a flight attendant for another airlines, housemates who lived in Florida, and Ben Calvin of Bay City, Michigan, an admitted drug user and dealer. Calvin was arrested in connection with a totally unrelated drug sale and charged with possession with intent to deliver cocaine. He agreed to cooperate with the government in its case against Meyers in order to secure the reduction or dismissal of the charges against himself. His aid was twofold: he testified at trial as to his previous dealings with Meyers and Debbie Feddick; and he made two taped telephone calls in which he attempted to purchase cocaine from Meyers.

At trial Calvin testified that Debbie Feddick is a good friend whom he has known 16 years, since he was about 8 years old. In early December 1978, he, his grandmother and his girlfriend, Susan Hammond ("Charley"), went to Florida to attend the wedding of his sister, Nancy. About a week before arriving, he called Debbie Feddick and Scott Meyers from his Bay City, Michigan home regarding the purchase of one ounce of cocaine. Although it is not clear whether he spoke to one or both of them, he testified that he was told: "We will check it out for you." Upon arriving in Florida on December 7, 1978, he visited the Miami apartment shared by Feddick and Meyers.

During this short visit, the purchase of cocaine was discussed and Debbie Feddick advised him that he would have to return the next day when Meyers was there. Calvin left shortly after Meyers arrived home. Calvin returned the next day, December 8, with the express purpose of buying cocaine. He, Scott Meyers and Debbie Feddick drove to a second apartment. While Meyers let them in with a key and proceeded to open a safe in the bedroom and withdraw cocaine and cash, Calvin and Miss Feddick waited in the living room. An exchange took place in the kitchen with Calvin buying 21 or 28 grams for $1,050, the price Meyers had quoted him. Sometime later that day and out of the presence of Meyers, Calvin, Debbie Feddick and "Charley" snorted cocaine. During the next two weeks or so, Calvin and "Charley" used about 5–7 grams. The balance was sold by Calvin in Michigan after it was first cut with mannitol.

Calvin next contacted Scott Meyers and Debbie Feddick on January 16, 1979, and again on either the 22nd or 23rd, to arrange another purchase. As a result of those contacts, Calvin agreed to meet Meyers' flight when it arrived at Detroit Metropolitan Airport, and to purchase three, 1 ounce packages of cocaine for $4500 cash. Although Calvin initially testified that he was unsure whether he spoke to Debbie Feddick or appellant, he later testified that Miss Feddick supplied him with Meyers' flight number, and arrival time. Calvin produced a business card on which he had written flight # 194, its arrival time, a facsimile of the logo of the airlines which employed Meyers, and the figure $4500. Also introduced into evidence were various bank records and testimony indicating that Calvin had withdrawn $3200 from his trust account around the time of January 24. Calvin testified that he counted the money in his car before entering the terminal where he exchanged the money for three, 1 ounce packages of cocaine which Meyers gave him in a red bag, 12–18″ long, and 5″ in diameter. Upon returning to his car, he noticed a $100 bill and realized that he had given Meyers $4400 instead of the agreed upon

$4500. On March 3, Debbie Feddick called and inquired about the missing $100. In response Calvin sent a $100 money order payable to Scott Meyers who subsequently endorsed and cashed it.

After his arrest on the unrelated charge on February 20, 1979, Calvin made two taped phone calls to Meyers in an attempt to purchase cocaine—one on March 23 and the other on April 6. Although the language in the calls was guarded, based on what was said plus the other evidence, the jury could find they were conversations between an eager buyer of drugs and a potential seller.

■ This Court finds that the December 1978 Florida drug transaction, involving both Meyers and Feddick, the telephone calls precipitating the January 24 meeting, in which Feddick advised Calvin of the time of the delivery, the March 3 telephone call from Debbie Feddick to Calvin, and Calvin's subsequent mailing of a $100 money order payable to, and endorsed and cashed by Scott Meyers, provide sufficient evidence of an agreement between Feddick and Meyers to possess cocaine with intent to distribute and to distribute it. There was evidence from which the jury could find Meyers was a willing participant in the concerted plan of operation and performed acts in furtherance of its accomplishment. We agree with appellant that there is insufficient evidence to show that Calvin and Meyers conspired to distribute cocaine. The evidence showed only a buyer-seller relationship between them. Calvin could have been purchasing for his own personal use. *United States v. Ford*, 324 F.2d 950, 952 (7th Cir. 1963); *United States v. Koch*, 113 F.2d 982, 983 (2d Cir. 1940). However, the conspiracy charged and supported by substantial evidence was that between Meyers and Feddick.

■ Meyers further argues that those incidences cited as probative of the conspiracy are incredible and were rejected by the jury

when it acquitted him of the substantive count of distribution of cocaine on January 24.[1] The government counters that this evidence is relevant and may be considered by the court when assessing the sufficiency of the evidence supporting the conspiracy conviction, since in all likelihood the evidence was considered by the jury during its deliberations on the conspiracy count.

The government's position is the correct one. Speculation as to the jury's evaluation is both improper and futile. As noted in *United States v. Lubrano*, 529 F.2d 633, 636, n. 1 (2d Cir. 1975), *cert. denied*, 429 U.S. 818, 97 S.Ct. 61, 50 L.Ed.2d 78 (1976):

> Appellant also suggests that his acquittal of the substantive count precludes reliance upon facts relevant to that count in evaluating the sufficiency of the evidence as to the conspiracy count. This argument has been raised repeatedly and consistently rejected. *See, e. g., United States v. Zane*, 495 F.2d 683 (2d Cir.), *cert. denied*, 419 U.S. 895, 95 S.Ct. 174, 42 L.Ed.2d 139 (1974), and cases cited therein at 690. The rule of law articulated in *Zane* preserves the integrity of the jury by closing the door on interminable speculation about the jury's motive for any given verdict.

*See also United States v. Bobo*, 586 F.2d 355, 371 (5th Cir. 1978), *cert. denied*, 440 U.S. 976, 99 S.Ct. 1546, 59 L.Ed.2d 795 (1980).

The Supreme Court recently commented on this principle in *Standefer v. United States*, 447 U.S. 10, 22, 100 S.Ct. 1999, 2007, 64 L.Ed.2d 689 (1980):

> . . . juries [may] acquit out of compassion or compromise or because of " 'their assumption of a power which they had no right to exercise, but which they were disposed through lenity.' " *Dunn v. United States*, 284 U.S. 390, 393, 52 S.Ct. 189, 190, 76 L.Ed. 356 (1932), quoting *Steckler v. United States*, 7 F.2d 59, 60 (CA2 1925).

---

1. Another pilot, Gerald Naughton, testified that he flew to Detroit with Meyers on January 24; that Meyers, who was his co-pilot, was in his view from the time they deplaned until they arrived at their lodgings that evening; and that no exchange took place between Meyers and anyone else.

**1146**

Meyers makes a number of additional contentions: namely, that evidence of a drug sale between Calvin and himself was inadmissible; statements made by Debbie Feddick were inadmissible hearsay; and the District Judge improperly sentenced appellant to five years imprisonment. We have carefully considered each of these claims, and have found them to be, both individually and collectively, no basis on which to reverse the District Court's judgment in this case.

■ Testimony as to the December 1978 drug transaction which occurred in Florida between Calvin, Debbie Feddick and appellant was properly admissible as evidence of the ongoing conspiratorial relationship and not, as appellant contends, improper evidence of a prior crime.

■ Similarly, the contention that Miss Feddick's statements are inadmissible hearsay is meritless. The District Judge conditionally admitted Miss Feddick's statements and required the government to prove by a preponderance of the evidence that they were made by her as a co-conspirator during the course and in the furtherance of a conspiracy. The court's finding that the government had carried its burden of proof was amply supported by the record and thus the statements were properly admitted under Federal Rule of Evidence 104(a). *See United States v. Enright*, 579 F.2d 980 (6th Cir. 1978). Meyers complains bitterly that Ben Calvin, the government's principal witness, was unworthy of belief in that he was an admitted law violator, was testifying to save himself from imprisonment, and was impeached. However, as this Court has repeatedly instructed, it is for the jury to determine what credit should be given a witness. This is no less true when the witness is a government informer and admitted narcotics user with a criminal record. *United States v. Cooper*, 321 F.2d 456 (6th Cir. 1963).

■ Finally, appellant was not denied his right of allocution as provided in Rule 32(a)(1), Fed.R.Crim.P., and *Green v. United States*, 365 U.S. 301, 81 S.Ct. 653, 5 L.Ed.2d 670 (1961). At an in-chambers conference with appellant's attorney prior to sentencing at which counsel for appellant provided the court with some character references, the District Judge advised counsel of the proposed sentence. Thereafter, in the courtroom the District Judge specifically invited appellant to speak in his own behalf. The fact that Meyers did not persuade the court to impose a lesser sentence is not a denial of the right to allocution. Nor was the sentence imposed an abuse of judicial discretion. That sentence, five years imprisonment, was well within the statutory maximum of 15 years for violation of 21 U.S.C. § 841(a)(1).

Accordingly, appellant's conviction is affirmed.