829 F.2d 1121
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Christine Marie SANTO, Defendant-Appellant.
 No. 86-5669.
 United States Court of Appeals, Fourth Circuit.
 Argued May 7, 1987.
Decided Sept. 17, 1987.
 
 1
 Appeal from the United States District Court for the District of Maryland, at Baltimore. Walter E. Black, Jr., District Judge. (CR 85-538-B)
 
 
 2
 Richard D. Paugh for appellant.
 
 
 3
 Breckinridge L. Willcox and Thomas F. O'Neill, III for appellee.
 
 
 4
 Before SPROUSE and CHAPMAN, Circuit Judges, and WISDOM, United States Senior Circuit Judge for the Fifth Circuit, sitting by designation.
 
 
 5
 WISDOM, Senior Circuit Judge, Sitting by Designation.
 
 
 6
 In 1986 a jury tried Christine Marie Santo and found her guilty of conspiring to distribute cocaine and heroin in violation of 21 U.S.C. Sec. 846. Her appeal presents three issues: (1) whether the evidence adduced at trial was sufficient to support the jury's verdict; (2) whether the district court abused its discretion in restricting the testimony of a witness the defendant offered as an expert; and (3) whether the district court committed reversible error by failing to strike portions of the government's sentencing memorandum. We affirm Ms. Santo's conviction.
 
 
 7
 This case stems from an undercover investigation conducted by the Federal Drug Enforcement Administration (the "DEA") and the Police Department of Howard County, Maryland. During the first nine months of 1985, government agents purchased both cocaine and heroin from the members of a suspected drug ring that operated in Columbia, Maryland. As a result of evidence gathered in the investigation, three men and two women[1] eventually pleaded guilty to charges of conspiracy to distribute cocaine and heroin.
 
 
 8
 Ms. Santo does not dispute the existence of the conspiracy. Nor does shedeny that the admitted members of the conspiracy performed overt acts in furtherance of its criminal purpose.[2] The essence of Ms. Santo's defense is that she was never a member of the conspiracy.
 
 
 9
 In assessing the sufficiency of the evidence against Ms. Santo we are, of course, bound by long-established precedent to view the evidence in the light most favorable to the government. Glasser v. United States, 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680, 704 (1942). The test is not whether we are convinced of Ms. Santo's guilt; rather, we must inquire only whether a rational jury could reasonably have concluded that Ms. Santo knowingly joined the acknowledged conspiracy. See United States v. Chindawongse, 771 F.2d 840, 847 (4th Cir. 1985), cert. denied, 106 S.Ct. 859 (1986). In reaching its verdict the jury was free to rely upon indirect and circumstantial evidence. See, e.g., United States v. MacDougal, 790 F.2d 1135, 1152 (4th Cir. 1986).
 
 
 10
 With these considerations in mind, we have no difficulty finding that the evidence in this case supports Ms. Santo's conviction. First, DEA agent Cindy Anne Glackin testified without objection that on May 2, 1985 she observed Ms. Santo conducting "countersurveillance" in the parking lot of the Olney Village Mart Shopping Center while Elena Renshaw was selling half a kilogram of cocaine to Detective Tyson of the Howard County Police Force. According to Tyson, Ms. Santo later admitted that she had been peeking at him through hedges in order to "keep an eye out" for Renshaw.
 
 
 11
 Second, on June 1, 1985, in the course of a taped telephone conversation about future cocaine shipments, Renshaw gave Santo's beeper number to DEA agent Carl Harrell and told him to call "if you need anything in a hurry"[3] Renshaw explained that she was about to leave for Paraguay, but she assured Agent Harrell that while she was out of the country Ms. Santo could answer questions. "I'm leaving a lot of instructions," Renshaw told Harrell, "keeping her [Santo] up to date on what's happening."
 
 
 12
 Finally, the jury might reasonably have based its verdict on the recorded telephone conversation of July 2, 1985 between Ms. Santo and Detective Tyson. The transcript of this phone call suggests that Santo was uncomfortable with the magnitude of the conspiracy's most recent undertaking, an 80 kilogram shipment of cocaine from Colombia, and that she was deeply dissatisfied with the management style of Maria Lucia Pedraza Rodriguez. Nevertheless, we conclude that a rational jury could have interpreted the conversation as establishing Ms. Santo's involvement in the conspiracy. For example, at one point in the discussion Ms. Santo complained that "[t]his is the first time really that I've been involved in anything like this. Usually I'm just, they tell me its here and pick it up. Okay?"[4] Later, when Detective Tyson asked for details about a certain supplier, Ms. Santo replied that "I don't really want to say [that] to you now because, I mean, I have to protect the trust that they have in me"[5] A reasonable jury could have decided in the light of the other evidence that these statements firmly established Ms. Santo's membership in the conspiracy. Thus, the government's evidence is legally sufficient.
 
 
 13
 The second question before us is whether the district court erred in limiting the expert testimony of Tommy Davis to the issue of whether Santo was an alcoholic. Davis was an independent drug and alcohol abuse counselor who had been introduced to Ms. Santo less than a week before trial. The defendant's counsel offered Davis as an expert on Santo's capacity to form criminal intent. Over the objections of counsel, Davis was not permitted to testify that Santo was drunk during the July 2, 1985 telephone conversation with Detective Tyson. Nor was he allowed to explain Ms. Santo's words in terms of "alcoholic grandiosity".
 
 
 14
 The qualification of an expert witness under Fed.R.Evid. 702 "lies within the sound discretion of the trial judge and will not be overturned in the absence of clear abuse". Martin v. Fleisner GmbH, 741 F.2d 61, 64 (4th Cir. 1984); see also Salem v. United States Lines, Co., 370 U.S. 31, 35, 82 S.Ct. 1119, 1122, 8 L.Ed.2d 313, 317 (1962). In this case the district court ruled that the excluded testimony belonged in "the realm of ... expertise other than [that of] an alcohol counselor". As the government emphasized both at trial and in this appeal, Davis's academic background was in political science, history, and English. Davis, a former alcoholic, had this to say about his own psychological problems:
 
 
 15
 I am deluded by alcoholic grandiosity. I have a distorted view of reality and fantasy. I live in a world of illusion and self-delusion, in that I keep telling myself, "I'm all right. Everybody else is wrong ...."
 
 
 16
 We hold that the district court did not abuse its discretion in restricting the testimony of Tommy Davis to his diagnosis of Santo's alcoholism.
 
 
 17
 Finally, Ms. Santo argues that the district court erred in failing to purge from the government's post-trial sentencing memorandum a suggestion that "Santo's testimony at trial was, at best, disingenuous and, at worst, perjurious". We disagree. The Supreme Court's decision in United States v. Grayson, 438 U.S. 41, 53, 98 S.Ct. 2610, 2617, 57 L.Ed.2d 582, 591 (1978) plainly endorses the practice of "considering a defendant's untruthfulness for the purpose of illuminating his need for rehabilitation ...". Furthermore, because the sentencing memorandum was submitted to the district court two months after Ms. Santo was found guilty, even if the characterization of Ms. Santo's testimony were inaccurate or unfair, it could not possibly have affected the verdict currently on appeal.[6]
 
 
 18
 The judgment of conviction is affirmed.
 
 
 
 [1]
 The five who pleaded guilty were: Ariel Ramon Rodriguez, Maria Lucia Pedraza Rodriguez, Rosa Elena Renshaw, Benjamin Giron, and Gildardo Grisales
 
 
 [2]
 Both the government and the trial court appear to have assumed that "overt acts" must be shown in this circuit to establish a violation of 21 U.S.C. Sec. 846. Because 38 of the "overt acts" listed in the indictment were performed by the five admitted conspirators, we need not pass judgment on this assumption in the present case. We note, however, that several circuits have held that "it is not necessary for the government to allege or prove an overt act to obtain convictions under the controlled substance conspiracy statutes". United States v. Mann, 615 F.2d 668, 671 (5th Cir. 1980), cert. denied, 450 U.S. 994 (1981); see also United States v. Yonn, 702 F.2d 1341, 1348 n.6 (11th Cir. 1983), cert. denied, 464 U.S. 917; United States v. Bermudez, 526 F.2d 89, 94 (2d Cir. 1975), cert. denied, 425 U.S. 970 (1976); Ewing v. United States, 386 F.2d 10, 15 (9th Cir. 1967), cert. denied, 390 U.S. 991 (1968). But see United States v. Myers, 646 F.2d 1142, 1143 (6th Cir. 1981)
 
 
 [3]
 Agent Harrell testified that beepers were "the. common method of contact with the people involved in this organization. The beeper system lets both parties to a conversation use untapped public pay phones. At the time of the investigation Christine Santo was employed as a part-time bookkeeper. No effort was made to explain why she carried a beeper at all, and a reasonable jury could infer that use of a beeper was evidence of Ms. Santo's participation in the conspiracy
 
 
 [4]
 According to Detective Tyson, Ms. Santo mentioned on another occasion that she had served as a repository for the cocaine that was sold to Tyson by Renshaw on May 2, 1985. The government chose not to stress this apparent admission at trial, but the jury could reasonably have decided to give it ,significance
 
 
 [5]
 The supplier in question, Rodolfo Humberto Angel, was indicted together with the appellant and the five conspirators named above in footnote 1. It appears from the record in this case that Angel never entered a plea; he is described in the government's brief as a "fugitive"
 
 
 [6]
 All of the cases cited in Ms. Santo's brief on this point refer to prosecutorial misconduct that takes place before the jury has entered its verdict. These citations are inapplicable to the present case