**UNITED STATES of America,**
**Appellee,**

v.

**Jose MOYHERNANDEZ, also known as Yindo, Defendant–Appellant.**

**No. 00–1522.**

United States Court of Appeals, Second Circuit.

Sept. 6, 2001.

Jeremiah Donovan, Old Saybrook, CT, for appellant.

Jeffrey A. Udell, Assistant United States Attorney; Mary Jo White, United States Attorney for the Southern District of New York, David Raymond Lewis, Assistant United States Attorney, of counsel, New York, NY, for appellee.

Present MESKILL, WINTER and STRAUB, Circuit Judges.

## SUMMARY ORDER

AFTER ARGUMENT AND UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED AND DECREED that the judgment of the District Court is hereby AFFIRMED.

Defendant-appellant Jose Moyhernandez ("Moyhernandez") appeals from a judgment of the United States District Court for the Southern District of New York (Michael B. Mukasey, *Chief Judge*) convicting him, following a jury trial, of conspiring to distribute, and to possess with intent to distribute, more than fifty grams of cocaine base, in violation of 21 U.S.C.

§ 846, and of receiving a firearm and ammunition, in violation of 18 U.S.C. § 922(g)(1). Finding that Moyhernandez qualified as a career offender, the District Court sentenced Moyhernandez to 360 months' imprisonment on the conspiracy count and 120 months' imprisonment on the firearm count, to run concurrently.

On appeal, Moyhernandez advances several contentions, which we address in turn.

## I. Possible Jury Confusion between "Cocaine Base" and "Crack Cocaine"

■ Although the indictment charged Moyhernandez with conspiring to distribute more than fifty grams of a controlled substance, "to wit, cocaine base, commonly known as 'crack cocaine,'" some of the testimony and other evidence included references to crack[1] rather than cocaine base, and the District Court's instruction to the jury explained that Moyhernandez was charged with conspiring to distribute "cocaine base in a form commonly known as 'crack cocaine,'" Moyhernandez argues for the first time on appeal that because the jury was not explained the difference between "cocaine base" and "crack" and because the evidence alternatively referred to both cocaine base and crack, the evidence is insufficient to sustain his conviction and his sentence.

■ Moyhernandez's argument confuses the role of the Sentencing Guidelines and the role of the statutory sentencing provisions applicable to his case. Although the Sentencing Guidelines distinguish between crack, carrying a much greater penalty, and other derivatives of cocaine base, see U.S.S.G. § 2D1.1(c); U.S.S.G.App. C, Amend. 487 (effective Nov. 1, 1993), the relevant statutory sentencing provision draws no such distinction, see 21 U.S.C. § 841(b)(1)(A)(iii) (prescribing a sentence of twenty years' to life imprisonment for a person with a prior felony drug conviction whose current offense involved more than "50 grams or more of a mixture or substance ... which contains cocaine base"). This statutory provision requires only that a jury find that the charged offense involved 50 grams or more of cocaine base, whether crack or another form of cocaine base. See United States v. Jackson, 59 F.3d 1421, 1422 (2d Cir.1995) (noting the distinction between the amendment to the Sentencing Guidelines and § 841(b)(1)(A)(iii), but adhering to its statutory interpretation of "cocaine base" as including all forms of cocaine base, in addition to crack). The District Court specifically instructed the jury that if it found the defendant guilty of conspiracy, it was then required to determine whether the conspiracy offense "involved fifty grams or more of cocaine base, which I have referred to as crack cocaine." In its answer to the special interrogatory, the jury found that the conspiracy involved at least 50 grams of crack cocaine, and the evidence was more than sufficient to support its finding.

The distinction between crack cocaine and other derivatives of cocaine base is

---

1. For example, during a narcotics sale with one of the government informants who tape recorded their conversation, Moyhernandez specifically described the narcotics as the "cooked stuff" or "crack." Moyhernandez was also recorded while speaking with his supplier, during which Moyhernandez explained that he wanted *"ponchera"* and not powder. On the date of his arrest, Moyhernandez was also heard discussing the time needed to cook the *"ponchera."* In his post-arrest statements that were admitted at trial, Moyhernandez also admitted that he was part of an organization that sold "crack cocaine." The lab reports, however, indicated only that the narcotics seized were "cocaine base" without distinguishing further whether they were crack or some other cocaine base derivative.

relevant only to the Sentencing Court, and the evidence was more than sufficient for the District Court to have concluded that the substance at issue was crack cocaine. *See, e.g., United States v. Canales,* 91 F.3d 363, 365, 368 (2d Cir.1996) (affirming sentence under crack provision because street name "crack" is unambiguous and there was no indication that the defendant believed he was dealing in anything other than crack).

## II. Sentencing Court Determination that Moyhernandez was a "Career Offender"

Moyhernandez next argues that the District Court erred by sentencing him under the "career offender" provisions of the Sentencing Guidelines because his prior criminal history was not included in the indictment and the jury was not required to make any findings with respect to it, in violation of *Apprendi v. New Jersey,* 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000). His argument is foreclosed by *Apprendi* itself because his 360–month sentence was below the statutory maximum of life imprisonment indicated by 21 U.S.C. § 841(b)(1)(A) (maximum sentence is life imprisonment once jury finds 50 or more grams of cocaine base). *See Apprendi,* 530 U.S. at 490, 120 S.Ct. 2348 ("Other than the fact of a prior conviction, any fact that increases the penalty for a crime *beyond the prescribed statutory maximum* must be submitted to a jury, and proved beyond a reasonable doubt.") (emphasis added). We have already rejected the argument that *Apprendi* "alters a sentencing judge's traditional authority to determine those facts relevant to selection of an appropriate sentence within the statutory maximum." *United States v. Garcia,* 240 F.3d 180, 183 (2d Cir.2001).

Moreover, even if his sentence were above the applicable statutory maximum, *Apprendi* still would not assist Moyhernandez because *Apprendi* expressly excepted the fact of a prior conviction from its holding. *See* 530 U.S. at 489–90, 120 S.Ct. 2348 (declining to overrule *Almendarez–Torres v. United States,* 523 U.S. 224, 118 S.Ct. 1219, 140 L.Ed.2d 350 (1998), which held that 8 U.S.C. § 1326(b)(2), a sentencing enhancement based on a defendant's prior conviction for an aggravated felony, was merely a penalty provision and not a separate criminal offense); *United States v. Latorre–Benavides,* 241 F.3d 262, 264 (2d Cir.2001) (holding that *Apprendi* carved out an exception to § 1326 by stating that the *Apprendi* requirement is applicable to facts other than a prior conviction and that *Almendarez–Torres* still governs). Therefore, we affirm Moyhernandez's sentence.

## III. Testimony by Informant that He Witnessed Moyhernandez Engage in an Uncharged Narcotic Sale

At trial, Moyhernandez objected, pursuant to Rules 404 and 403 of the Federal Rules of Evidence, to the government's intent to elicit testimony from an informant that he observed the defendant engage in an apparent cocaine transaction with two unknown individuals before he brought the defendant to the attention of Bureau of Alcohol, Tobacco, and Firearms ("ATF") agents. The government sought to introduce such evidence as background, to explain why the informant told ATF about Moyhernandez and to explain why Moyhernandez trusted the second informant, who was introduced to him by the first informant. The District Court overruled the objection, but cautioned the government to speed through this testimony. The District Court immediately followed the testimony with a careful limiting instruction, informing the jurors that they could consider the evidence as an explanation for why the witness acted the way he

did, but they could not consider it as evidence that the charged crimes occurred.

The District Court did not exceed its allowable discretion by admitting this evidence. We have held that evidence of prior bad acts is admissible to explain the background relationship between the defendant and the cooperating witness and to explain why the defendant would trust a cooperating witness. *See, e.g., United States v. Pipola,* 83 F.3d 556, 566 (2d Cir.1996); *United States v. Harris,* 733 F.2d 994, 1006–07 (2d Cir.1984) (concluding that district court did not abuse its discretion admitting evidence that informant, who was not a member of the charged conspiracy, had previously given defendant two to three kilograms of heroin because this evidence tended to show the basis for the defendant's trust of the informant). Before this evidence was offered, a case agent had already testified to the details of the charged drug transactions and the defendant's post-arrest admissions and the government had admitted, and played for the jury, tape-recorded conversations between the defendant and the informant during the drug transactions at issue. Any undue prejudice from the prior act evidence would have been alleviated by its brief presentation, especially in comparison with the case agent's extensive testimony, and by the careful limiting instruction given by the court. *See United States v. Roldan–Zapata,* 916 F.2d 795, 804 (2d Cir.1990) (evidence that represented only a tiny fraction of the testimony heard by the jury and was no more sensational than the crimes with which the defendant had been charged did not warrant exclusion under Rule 403); *United States v. Livoti,* 196 F.3d 322, 326 (2d Cir.1999) (no error when prior act evidence no more sensational than charged offense and court gave a careful limiting instruction).

## IV. Admission of Statements by Moyhernandez

■ On appeal, Moyhernandez contends that the District Court erred by admitting three statements made by him on the ground that they were made during the course of plea negotiations, in violation of Rule 11(e)(6) of the Federal Rules of Criminal Procedure [2] and Rule 410 of the Federal Rules of Evidence.[3] He did not object below.

The defendant made the first set of statements to federal agents on the date of his arrest after waiving his constitutional rights (collectively, "Statement One"). During Statement One, Moyhernandez admitted his involvement in a substantial narcotics distribution organization, which sold "multikilos" of narcotics including cocaine and crack daily, and described his role as a street seller in the organization. Moyhernandez also agreed to become a confidential informant and signed agreements waiving his right to a speedy presentment. Moyhernandez did not become an informant and instead fled the jurisdiction.

**2.** Rule 11(e)(6) provides, in relevant part,
 Inadmissibility of Pleas, Plea Discussions, and Related Statements. Except as otherwise provided in this paragraph, evidence of the following is not, in any civil or criminal proceeding, admissible against the defendant who made the plea or was a participant in the plea discussions ... (D) any statement made in the course of plea discussions with an attorney for the government which do not result in a plea of guilty or which result in a plea of guilty later withdrawn.

**3.** Rule 410 also prohibits, subject to certain exceptions not relevant here, the admission against the defendant of "any statement made in the course of plea discussions with an attorney for the prosecuting authority which do not result in a plea of guilty or which result in a plea of guilty later withdrawn."

Two years later, on October 26, 1998, Moyhernandez and his former attorney attended a meeting in the United States Attorney's Office and admitted that he had met the second informant through the first informant, that he sold the second informant a firearm and sold him crack twice (collectively, "Statement Two"). The record lacks contemporaneous evidence regarding the precise factual circumstances of this meeting, but the government submits a copy of a January 30, 2000 letter to Moyhernandez's new attorney describing this meeting as a "safety-valve proffer," requested by the defendant, and conducted without a proffer agreement and with an explanation to the defendant beforehand that his statements would be unprotected.

Finally, as he was being escorted by the case agent after a late 1999 meeting at the United States Attorney's Office, Moyhernandez told the agent that he knew the second informant had fled and that only he and the agent knew about the case ("Statement Three"). The government did not introduce any statement made during the meeting itself, but only the statement made to the case agent outside of the meeting.

Statements One and Three simply do not qualify for protection under Rule 410 and Rule 11(e)(6), as those rules do not apply to statements made outside of the course of plea discussions and there is no evidence that the government agents were authorized by the Assistant United States Attorneys to engage in plea negotiations. *See, e.g., United States v. Arroyo–Angulo,* 580 F.2d 1137, 1148 (2d Cir.1978); *United States v. Levy,* 578 F.2d 896, 901–02 (2d Cir.1978); *see also United States v.*

*Greene,* 995 F.2d 793, 799–800 (8th Cir. 1993) (holding that post-arrest statements were admissible where agent had no express or implied authority to conduct plea negotiations even though the agent solicited the defendant's cooperation and received prosecutor's approval to continue his attempt to get the defendant's cooperation).

■ Because the record itself is unclear, we cannot determine the precise nature of the meeting where Statement Two was made. Because Moyhernandez did not object to the admission of Statement Two at trial, we review for plain error. We do not find plain error, however, because the admission of Statement Two was harmless in light of the other evidence. The government already had admitted the tape recordings of the drug and firearm transactions Moyhernandez admitted during Statement Two, the physical evidence from those transactions, and, through Statement One, Moyhernandez's admissions regarding his involvement in a narcotics operation dealing in cocaine and crack. *See Levy,* 578 F.2d at 902 (concluding that even if admission of statement violated Rule 11(e)(6), its admission was harmless because it was cumulative of earlier, properly admitted statements).

### V. Contentions relating to Voice Identification on Admitted Audiotapes

■ Although Moyhernandez concedes that there was no error in the admission of the transcripts and the speaker attributions contained therein[4] under our usual standard, he urges us to adopt a stricter standard for admission for voice identification where the recorded conversations are

---

4. At trial, the case agent testified that she had made the voice attributions on the transcripts and was able to recognize the voice of the second informant and the defendant because she was familiar with both of their voices.

Officer Montes, who had interviewed the defendant in Spanish, also confirmed the accuracy of the voice attributions and testified that the "voice on the tapes is one and the same as the voice of the defendant."

in a foreign language and where translations of the conversations will be admitted as the primary evidence. Moyhernandez also contends that the District Court erred by not instructing the jury that it was free to make its own determination that the voice on the tapes was that of the defendant, who testified [5] that only some of the tapes were of him. Finally, Moyhernandez claims he was denied constitutionally effective assistance of counsel because his trial counsel did not move to suppress the voice attributions, did not cross-examine the case agent and Officer Montes about the attributions, and did not question Moyhernandez about the attribution.

At trial, defense counsel argued in summation that the jury should not accept the voice attributions made by the government, that Officer Montez's attributions were unreliable because he only had a limited familiarity with Moyhernandez's voice, and the case agent's attributions were also unreliable because she could not speak Spanish. Defense counsel urged the jury to make its own determination.

The District Court, however, instructed the jury that

> it is the English translation of the transcript that is the evidence. I emphasize to you that even if you understand Spanish, it is still the English translation of the transcript that is the evidence and not the Spanish tape recordings you have heard, nor the Spanish transcripts of those conversations.

Moyhernandez did not object to the charge.

The District Court did not exceed its allowable discretion in admitting the transcripts or the voice attributions because both the case agent, who had spoken repeatedly with the defendant, and a police officer who interviewed the defen-

dant in Spanish recognized his voice and agreed that the attributions were accurate. *See, e.g., United States v. Cambindo Valencia,* 609 F.2d 603, 640 (2d Cir. 1979). We decline to follow Moyhernandez's invitation to create a higher standard for recorded conversations in another language in this instance because a witness, who had spoken to Moyhernandez in Spanish, identified his voice and the jurors heard Moyhernandez testify themselves. The arguments Moyhernandez makes on appeal and those he made to the jury go to the weight of the evidence, not to the threshold question of admission.

 Although it may have been preferable for the District Court to have instructed the jury that it was free to make its own determination of the accuracy of the voice attribution, the District Court was within its discretion in not so instructing. *See United States v. Ulerio,* 859 F.2d 1144, 1145–46 (2d Cir.1988) (affirming conviction where court admitted transcripts with voice attributions without a limiting instruction; defendants, who testified, denied it was their voices and jury was well aware that attributions rested upon the credibility of the testifying agent who made the attribution). Here, the jurors knew that the defendant, both in his testimony, and through his counsel's summation, sharply disputed the accuracy of the voice attributions and was instructed specifically to weigh the credibility of each of the witnesses.

 Finally, Moyhernandez does not meet his burden under *Strickland v. Washington,* 466 U.S. 668, 687–89, 693–94, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). His counsel's alleged failures may be viewed as strategic decisions to, for example, avoid permitting both law enforcement witnesses

---

**5.** Moyhernandez testified in English.

from reiterating and cementing their view that the voice on the tapes was Moyhernandez's. Moreover, the government provided adequate foundation to admit the transcripts and the voice identification testimony, thus, any such challenge to their admission would have been futile. Counsel argued extensively during summation about the unreliability of the law enforcement officials' voice identifications and urged the jury to decide this fact itself. These were reasonable tactical decisions and Moyhernandez cannot show, as required by *Strickland*, that his counsel's performance fell below the objective standard of reasonableness. *See, e.g., United States v. Luciano*, 158 F.3d 655, 660 (2d Cir.1998) ("the conduct of examination and cross-examination is entrusted to the judgment of the lawyer, and an appellate court on a cold record should not second-guess such decisions unless there is no strategic or tactical justification for the course taken"); *United States v.. Eisen*, 974 F.2d 246, 265 (2d Cir.1992) (same).

### VI. Government's Summation

■ Moyhernandez next argues that the prosecutor improperly defined the term *"ponchera"* as "crack cocaine" during his summation, even though the parties had stipulated that the interpreter would testify that there were a few slang expressions, of which *"ponchera"* seemingly was one, that did not translate into English and were left in Spanish.[6] Moyhernandez did not object. Far from amounting to conduct that was "so severe and significant as to result in the denial of [Moyhernandez's] right to a fair trial," *United States v. Locascio*, 6 F.3d 924, 945 (2d Cir.1993), the

prosecutor's statement suggests only an inference that the jury could draw. This suggestion is permissible so long as the prosecutor does not misstate the evidence. *See United States v. Myerson*, 18 F.3d 153, 163 (2d Cir.1994) (noting that it "well settled that 'the "prosecution and defense are entitled to broad latitude in the inferences they may suggest to the jury during closing arguments," provided they do not misstate the evidence' ") (internal citations omitted). Although this inference is different than the one Moyhernandez had preferred that the jury would draw, it is clear that the prosecutor did not misstate the evidence.

### VII. Admission of Certain Statements by Case Agents and Non–Testifying Informant

■ Lastly, Moyhernandez objects on appeal to the admission of many different statements as hearsay. First, he objects to the admission of questions by the second informant to the ATF agents on a day when the second informant made no purchases from the defendant. These questions, however, are not assertions offered for their truth and cannot be hearsay. *See, e.g., United States v. Oguns*, 921 F.2d 442, 449 (2d Cir.1990).

■ Next, he challenges statements made by the law enforcement agencies about their instructions to the informants indicating their plan of action regarding the defendant. These statements were admissible to show the background events leading to the charged crimes, although they are not admissible as substantive proof of the matters asserted. *See United*

---

6. During summation, the prosecutor stated that

Ponchero [*sic* ] is a phrase in Spanish that's not translated, presumably according to the stipulation we had from the translator because it's a slang term that she does not

have a ready definition of, but based on the context, and based on where the phrase the Ponchero [*sic* ] comes up elsewhere in these tapes, the pretty clear inference here that that is referring to the crack.

▮▮▮▮▮▮▮▮

*States v. Lubrano,* 529 F.2d 633, 637 (2d Cir.1975), *cited in United States v. Reyes,* 18 F.3d 65, 70 (2d Cir.1994). Moyhernandez neither objected nor requested a limiting instruction below and cannot demonstrate plain error here.

▮▮▮ Finally, he objects to the "header statements" recorded by the ATF agents introducing the tape recordings which stated, for example, the date and "Attempt of [confidential informant] to purchase a 45 caliber pistol from Yindo." These statements also fall within *Lubrano* and Moyhernandez has failed to demonstrate plain error from their admission.

## CONCLUSION

We have considered Moyhernandez's remaining arguments and find them to be without merit. For the reasons provided above, the judgment of the District Court is AFFIRMED.