**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Michael C. PENNYMAN,**
**Defendant–Appellant.**

No. 89–1863.

United States Court of Appeals,
Sixth Circuit.

Submitted Oct. 11, 1989.

Decided Nov. 13, 1989.

Robert Haviland, Asst. U.S. Atty., Flint, Mich., for plaintiff-appellee.

Thomas V. Wilhelm, Birmingham, Mich., for defendant-appellant.

Before KEITH, MILBURN and NORRIS, Circuit Judges.

MILBURN, Circuit Judge.

Defendant-appellant Michael C. Pennyman appeals his jury conviction for attempted possession of cocaine with intent to distribute. For the reasons that follow, we affirm.

## I.

### A.

On September 30, 1988, a federal grand jury for the eastern district of Michigan returned a sealed indictment charging defendant Pennyman and nine codefendants with conspiracy to possess cocaine with intent to distribute in violation of 21 U.S.C. § 846. The grand jury also charged Pennyman with a separate count of attempted possession of cocaine with intent to distribute in violation of section 846. Pennyman was arraigned on November 4, 1988.

Trial began for Pennyman and eight codefendants on March 7, 1989. At the conclusion of the government's case, Pennyman moved for a judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29.[1] The jury returned a verdict on May 5, 1989, finding Pennyman not guilty of the conspiracy charge but convicting five of the codefendants on that charge. However, the jury found Pennyman guilty of attempted possession of cocaine with intent to distribute.

On July 20, 1989, the district court sentenced Pennyman to six months in a community corrections center, fined him $6,000, and placed him on three years probation. This timely appeal followed.

### B.

The FBI became suspicious that Larry White of Flint, Michigan, was dealing heavily in cocaine. From April 22, 1986, to May 21, 1986, they recorded his conversations through wiretaps on his telephones and a hidden microphone in his office. The recordings that resulted confirmed that White was dealing heavily in cocaine and formed the basis of the charges against nine defendants, one of whom was Michael Pennyman.

At the trial, one witness testified that he saw Pennyman socializing at White's home in 1987 and that Pennyman had helped in one 1980 trip which resulted in delivery of four packets of cocaine to Flint, Michigan. However, most of the evidence against Pennyman came from a conversation between Larry White and him at White's home which was intercepted by hidden microphone at 2:11 a.m. on May 9, 1986. The conversation began with Pennyman saying, "That's ah twenty-two. That's twenty-two hundred. I wanna get ah *another* couple of ounces." White replied that he couldn't "do anything till about ten in the morning" and changed the topic of conversation to a female named "LaDonna."

White explained to Pennyman that LaDonna had been bragging how "my man [Pennyman] done give me two ounces." White warned Pennyman that LaDonna talked too much and was "more interested in the glamour and the flash" than in "getting some money." Pennyman responded, "that bitch brought in—ah twenty-two hundred dollars man."

White continued to warn Pennyman, saying, "Don't let her get ahead of ya 'cause

---

1. Neither the record nor the briefs indicate whether Pennyman renewed his motion at the conclusion of all the evidence. Failure to renew a motion for judgment of acquittal generally limits the reviewing court to examining for "plain error." *United States v. Denton,* 556 F.2d 811, 817 (6th Cir.), *cert. denied,* 434 U.S. 892, 98 S.Ct. 269, 54 L.Ed.2d 178 (1977). Since this case is being decided on the briefs without the benefit of oral argument and can be disposed of by the conclusion that there was *no error,* thus, no plain error, we will assume *arguendo* that Pennyman renewed the motion.

... she likes that"; "you ... give her something [she] hit the road and what you gonna get is gonna be a story." Pennyman replied, "I don't fool with credit ... it's got to be money up front."

White then warned Pennyman that he should maintain a "square image" by going to work every day and doing his job satisfactorily, and again cautioned Pennyman that LaDonna had been boasting that Pennyman gave her two ounces of cocaine to work with. White suggested that Pennyman somehow insulate himself from LaDonna. The conversation ended with Pennyman, apparently in response to White's advice that he should maintain a "square image," stating, "Now that car I got out there and all my s____. I ain't sold one goddamn ten-cent bag of coke to get it." The next day, May 10, 1986, in a telephone conversation, Pennyman told White, "[I have] the balance for what I owe you."

The issue presented for appeal is whether the evidence at trial was sufficient to support a conviction for attempt to possess cocaine with intent to distribute.

## II.

### A.

When appeal is taken from a criminal conviction on the grounds that the evidence is insufficient to support the conviction, the reviewing court determines "whether after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Gallo*, 763 F.2d 1504, 1518 (6th Cir.1985), *cert. denied*, 475 U.S. 1017, 106 S.Ct. 1200, 89 L.Ed.2d 314 (1986) (emphasis in original) (quoting *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)). The test for denial of a judgment of acquittal pursuant to Fed.R.Crim.P. 29 is the same. *See United States v. Holloway*, 731 F.2d 378, 381 (6th Cir.), *cert. denied*, 469 U.S. 1021, 105 S.Ct. 440, 83 L.Ed.2d 366 (1984) ("[W]e must view the evidence and all reasonable inferences in the light most favorable to the government. If the evidence is such that a reasonable mind might fairly find guilt beyond a reasonable doubt, the denial of defendant's motion for acquittal must be affirmed.") (citations omitted). Whether the evidence is direct or circumstantial, the test is the same. *Gallo*, 763 F.2d at 1518.

### B.

To convict a person of "attempt" to commit a drug offense, the government must establish two essential elements: (1) the intent to engage in the proscribed criminal activity, and (2) the commission of an overt act which constitutes a substantial step towards commission of the proscribed criminal activity. *United States v. Reeves*, 794 F.2d 1101, 1104 (6th Cir.), *cert. denied*, 479 U.S. 963, 107 S.Ct. 463, 93 L.Ed.2d 408 (1986). Because of problems of proving intent in attempt cases and the danger of convicting for mere "thoughts, desires or motives," we require that the "substantial step" consist of "objective acts [which] ... mark defendant's conduct as criminal in nature." *Reeves*, 794 F.2d at 1103–04; *United States v. Pennell*, 737 F.2d 521, 525 (6th Cir.1984), *cert. denied*, 469 U.S. 1158, 105 S.Ct. 906, 83 L.Ed.2d 921 (1985) (quoting *United States v. Everett*, 700 F.2d 900, 909 (3d Cir.1983)). "[T]he defendant's objective conduct, taken as a whole, must unequivocally corroborate the required subjective intent to purchase or sell actual narcotics." *Pennell*, 737 F.2d at 525.

Pennyman argues that standard adopted in *Pennell* was not met here. The government's brief carefully points out that *Pennell* differs from this case in that *Pennell* dealt with "sham" drugs. However, the government concedes that *Pennell* is a solid principle and applicable to a case like this one. Thus, the question is whether "unequivocal acts" can be found on the facts presented in this case.

Defendant Pennyman complains that "[t]here was no proof that [he] actually purchased or possessed narcotics." Appellant's Brief at 4. In cases decided both before and after *Pennell*, we have upheld attempt convictions where the defendant fell short of physically possessing either "actual" or "sham" drugs. *See United*

States v. Williams, 704 F.2d 315, 321 (6th Cir.), cert. denied, 464 U.S. 991, 104 S.Ct. 481, 78 L.Ed.2d 679 (1983) (failure to possess was not fatal to charge where defendant made a telephone call to arrange deal and arrived later with $5,400 to consummate the deal); Reeves, 794 F.2d 1101, 1105 (6th Cir.1986) (affirming conviction for attempted possession with intent to distribute cocaine based upon defendant's "constructive possession"). Similarly, other circuits have upheld attempt convictions though the defendant's efforts failed to put him in possession of drugs. E.g., United States v. Dworken, 855 F.2d 12, 19–21 (1st Cir.1988) (conviction upheld on basis of negotiations though the negotiations failed to culminate in a deal); United States v. Manley, 632 F.2d 978, 987–89 (2d Cir.1980), cert. denied sub nom. Williams v. United States, 449 U.S. 1112, 101 S.Ct. 922, 66 L.Ed.2d 841 (1981) (presence during early morning hours with sum of money equivalent to purchase price).

■ A defendant's failure to physically possess drugs or "sham" drugs is given little weight for two reasons. First, 21 U.S.C. § 846 is read so as to minimize technical obstacles to enforcement of drug laws. Reeves, 794 F.2d at 1104. Secondly, collateral acts by another person that may have prevented defendant from consummating the deal to purchase cocaine do not negate his subjective intent to possess. See Pennell, 737 F.2d at 525–26. We conclude that a defendant may be found to have taken a "substantial step" for the purpose of an attempt conviction though he or she has failed to gain possession of drugs or "sham" drugs.

■ Accordingly, we next determine whether Pennyman's conduct "taken as a whole" corroborates a subjective intent to possess cocaine. The evidence in this case, viewed in the light most favorable to the government, shows that Michael Pennyman was in frequent contact with Larry White, a known drug dealer. The evidence supports an inference that at least once in the past Perryman obtained cocaine from White and marketed it to the public through LaDonna. Furthermore, the re- corded conversation of May 9, 1986, between Pennyman and White shows that Pennyman went to White attempting to purchase, either by cash or by consignment, "another couple of ounces" of cocaine for resale. We conclude that Pennyman's own recorded words, when construed in a light most favorable to the government, satisfy Pennell because they "unequivocally corroborate" his intent to purchase and resell cocaine.

Pennyman next argues that the trial court erred by denying his motion for judgment of acquittal at the end of the government's case. He relies heavily upon the following language from United States v. Meyers, 646 F.2d 1142 (6th Cir.1981), for the proposition that evidence which shows nothing more than a buyer-seller relationship is insufficient to support a conviction for attempted possession of cocaine with intent to distribute:

"We agree with appellant [Meyers] that there is insufficient evidence to show that Calvin and Meyers conspired to distribute cocaine. The evidence showed only a buyer-seller relationship between them. Calvin could have been purchasing for his own personal use."

Id. at 1145 (emphasis supplied).

Pennyman's reliance upon Meyers is misplaced since "the conspiracy charged and supported" by the evidence was not between Meyers and Calvin but between Meyers and a female helper. Id. More importantly, Meyers is distinguishable from this case, both on the law to be applied and the facts. In Meyers, the defendant was charged with conspiracy rather than attempt. Thus, for Meyers to have been guilty of conspiring with Calvin, the two must have had a common purpose and plan. See United States v. Christian, 786 F.2d 203, 211 (6th Cir.1986). According to the language quoted above, Calvin could have been buying for his own personal use, and, if so, there could have been no conspiracy to distribute cocaine between Meyers and Calvin.

Unlike Meyers, this case involves an attempt conviction. For the purposes of this appeal, it is not important what Larry

White expected Pennyman to do with his cocaine provided Pennyman took a substantial step to possess cocaine with the requisite intent to distribute. *See United States v. Williams*, 704 F.2d 315, 321 (6th Cir. 1982) (stating the elements of attempt); *United States v. Mandujano*, 499 F.2d 370, 376 (5th Cir.1974), *cert. denied*, 419 U.S. 1114, 95 S.Ct. 792, 42 L.Ed.2d 812 (1975) (cited in *Williams*, 704 F.2d at 321) (after lengthy analysis, clarifying the requisite mental state); *see also United States v. Pope*, 561 F.2d 663, 670 (6th Cir.1977) (holding that conviction for principal offense of possession with intent to distribute requires specific intent to distribute). A trier of fact can find intent to distribute given sufficient evidence to support an inference that the drugs were not for the defendant's own personal use but were to be passed on to others. *See United States v. Giles*, 536 F.2d 136, 141 (6th Cir.1976) ("The District Judge concluded that these drugs were not for [defendant's] personal use, and that therefore he had the intent to distribute them. Such an inference is permissible.").

In this case, the jury heard the tape of a forty-five minute conversation between defendant Pennyman and Larry White, a multi-kilogram dealer in cocaine. Pennyman concedes in his brief that the conversation is incriminating. In fact, the conversation covered only drug-related topics: the exchange of cocaine from White for $2,200 from Pennyman; the danger of "LaDonna" boasting about her drug source and her usefulness to Pennyman ("That bitch brought in ah twenty-two hundred dollars, man."); and the importance of Pennyman maintaining a "square image" so that "nobody be the wiser."

Pennyman puts much reliance on one supposedly exculpatory statement; *viz.*, "Now, that car I got out there and all my s——. I ain't sold one goddamn ten-cent bag of coke to get it." Considering the evidence as a whole in a light most favorable to the government, we conclude that *any* rational trier of fact could have found that Pennyman was attempting to buy cocaine for resale notwithstanding his statement concerning his car, etc. Thus, we hold that the district court did not err in denying defendant's motion for judgment of acquittal.

### III.

Accordingly, for the reasons stated, we AFFIRM.