961 F.2d 1580
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Robert J. THENO, Defendant-Appellant.
 No. 91-5817.
 United States Court of Appeals, Sixth Circuit.
 May 14, 1992.
 
 Before NATHANIEL R. JONES and ALAN E. NORRIS, Circuit Judges; and JOINER, Senior District Judge.*
 PER CURIAM.
 
 
 1
 Pursuant to a one-count indictment, a jury convicted appellant, Robert J. Theno, of attempting to possess cocaine with the intent to distribute it in violation of 21 U.S.C. §§ 841(a)(1) and 846. On appeal, Theno contends that the evidence was insufficient to support the jury's verdict. He also objects to the district court's failure to give an entrapment instruction, as well as to certain evidentiary decisions made during trial and certain sentencing decisions made under the Sentencing Guidelines. Finding these contentions lacking in merit, we now affirm the conviction and sentence.
 
 I.
 
 2
 On October 30, 1990, agent Gary Sparks of the Northern Kentucky Narcotics Unit ("NKNU") received a telephone call from Jerry Norton, a Cincinnati Police Department detective. According to Norton, his department had information that a suspected drug dealer was staying at a Knight's Inn in Florence, Kentucky, and was driver of a 1990 Jaguar automobile with Wisconsin license plates. He asked Sparks to help arrange for surveillance. Sparks obliged by personally going to the motel where he observed a car fitting the description given to him by Norton parked outside the suspect's room. The surveillance continued for the next three days before it was suspended.
 
 
 3
 Detective Norton again contacted Sparks on November 16, 1990. This time he asked his Kentucky colleague to meet with him and a confidential informant. This informant, Eddie Pichetello, told the group that a man he knew as Robert Theno had an interest in buying either cocaine or marijuana.
 
 
 4
 Posing as a drug dealer, Sparks telephoned Theno and arranged a preliminary meeting between Theno and someone who Sparks described as a "runner" in the operation, but who was actually an NKNU agent named Ralph Talkington. This meeting took place at the Knight's Inn and was recorded by Sparks, who, unknown to Theno, waited outside.
 
 
 5
 As a result of that meeting, the agents concluded that Theno had a serious interest in drug trafficking. Sparks therefore followed through with a pre-arranged rendezvous at a local truck stop the following morning. In the course of their conversation, the two settled on a price of $23,500 per kilogram of cocaine, minus $7,000 that Theno alleged was owed to him by Pichetello. Appellant expressed an interest in purchasing two kilograms of the drug.
 
 
 6
 Theno then explained that he did not have the cash immediately available but would have it wired to an account specified by Sparks. On November 20, 1990, $21,000 was transferred by wire from Milwaukee, Wisconsin, to a Northern Kentucky bank account in payment for the first kilogram of cocaine. After withdrawing the money, Sparks arranged to meet Theno at the truck stop to deliver the drugs. Agent Talkington arrived at this meeting with baking soda disguised to look like cocaine. Theno accepted the delivery and placed it in his car, at which point he was arrested.
 
 II.
 
 7
 Theno alleges that the district court committed error when it permitted approximately four hours of taped conversations between Theno and the agents to be played for the jury without the aid of a written transcript. Appellant also objects to the fact that the agents were allowed to identify who was speaking at various points on the tape, as well as to explain the meaning of comments made by Theno.
 
 
 8
 This court reviews questions of this nature surrounding the admission of tape recordings under an abuse of discretion standard. United States v. Scaife, 749 F.2d 338 (6th Cir.1984). Abuse of discretion occurs "only where the unintelligible portions of a tape recording are so substantial that the recording as a whole is rendered untrustworthy." Id. at 345. The use of transcripts of audio recordings is also subject to abuse of discretion review. United States v. Robinson, 707 F.2d 872, 876 (6th Cir.1983).
 
 
 9
 We begin by observing that the tapes were provided to Theno's counsel in advance of trial pursuant to Fed.R.Crim.P. 16. However, counsel chose not to raise the issue of audibility until the tapes were played during trial. Moreover, appellant fails to point out an actual instance in which a witness is supposed to have "interpreted" an inaudible portion of a tape. The district court reviewed the tapes and found them audible. Under these circumstances, we find that the district court acted within its discretion in admitting them.
 
 
 10
 With regard to the agents' testimony concerning the tapes, we note that these testifying witnesses were present when the recordings were made. A witness is permitted to explain what went on during a conversation to which he was a party. See United States v. Martin, 920 F.2d 393, 397-98 (6th Cir.1990). Furthermore, "[a] government agent may, like any other witness, testify in the form of an opinion as to his understanding of a defendant's statement." United States v. Graham, 856 F.2d 756, 759 (6th Cir.1988), cert. denied, 489 U.S. 1022 (1989). We find nothing in the record to indicate that the agents' testimony was improperly admitted.
 
 III.
 
 11
 Theno also argues that the government failed to produce sufficient evidence at trial to sustain his conviction. This contention need not detain us long.
 
 
 12
 When reviewing such claims, this court must affirm the jury's verdict if, when viewed in a light most favorable to the government, a rational trier of fact could have found the elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319 (1979); United States v. Martin, 920 F.2d 345, 348 (6th Cir.1990), cert. denied, 111 S.Ct. 2038 (1991). To gain a conviction for attempted possession with intent to distribute illegal narcotics, the government had to prove that Theno intended to engage in the illegal drug transaction, and that he committed an overt act constituting a substantial step toward the commission of that transaction. United States v. Pennyman, 889 F.2d 104, 106 (6th Cir.1989). Because intent is often difficult to prove, "the defendant's objective conduct, taken as a whole, must unequivocally corroborate the required subjective intent to purchase or sell actual narcotics." Id. (quoting United States v. Pennell, 737 F.2d 521, 525 (6th Cir.1984), cert. denied, 469 U.S. 1158 (1985)).
 
 
 13
 In the case before us, appellant manifested such objective intent: his statements to the agents indicated a familiarity with drug trafficking, including money laundering and protecting assets from seizure; he negotiated a lower price for the cocaine; and, most importantly, he accepted delivery of what he assumed to be a kilogram of the drug. Given these facts, the jury had sufficient evidence upon which to conclude that Theno possessed the requisite intent to engage in drug trafficking.
 
 IV.
 
 14
 Theno next asserts that the district court erred in failing to give a jury instruction on entrapment. However, counsel for appellant neither requested an entrapment instruction nor did he object to the instructions as given. His complaint, therefore, must rise to the stature of plain error. United States v. Pearce, 912 F.2d 159, 163 (6th Cir.1990), cert. denied sub nom. Thorpe v. United States, 111 S.Ct. 978 (1991).
 
 
 15
 A valid entrapment defense has two related elements: government inducement of the crime, and a lack of predisposition on the part of the defendant to engage in criminal conduct. Mathews v. United States, 485 U.S. 58, 63 (1988). The facts fail to support appellant's contention that he was an "unwary innocent." The criminal acts for which Theno stands convicted unfolded over the course of several days. During that time, the record reveals that appellant had several opportunities to terminate his illicit activity. Instead, he chose to press forward, actively negotiating a better price for the cocaine and initiating the wire transfer of the purchase money. Under these circumstances, the trial court would not have erred in declining to give an instruction on entrapment had it been requested. Clearly, then, there was no plain error.
 
 V.
 
 16
 Theno next takes issue with two decisions made by the district court in applying the Sentencing Guidelines.
 
 
 17
 He first contends that, by imposing a two-level enhancement for obstruction of justice, the district court punished him for taking the stand. See U.S.S.G. § 3C1.1, comment. (n. 1) ("This provision is not intended to punish a defendant for the exercise of a constitutional right."). However, Theno points to nothing in the record to support that contention. The district court did make a factual finding that Theno lied during his testimony at trial. According to the commentary to section 3C1.1, where a defendant testifies untruthfully concerning a material fact, he should be deemed to have obstructed justice and the two-level enhancement should apply. U.S.S.G. § 3C1.1, comment. (n. 3(b)). This court has said that once the district court determines that a defendant has testified untruthfully while under oath, the court no longer enjoys discretion as to whether to apply the enhancement--it must be imposed. United States v. Alvarez, 927 F.2d 300, 303 (6th Cir.), cert. denied, 111 S.Ct. 2246 (1991). Because the district court's determination that Theno was lying is not clearly erroneous, the court cannot be said to have erred in applying the enhancement for obstruction of justice.
 
 
 18
 We likewise affirm the district court's decision to deny a reduction in sentence for substantial assistance pursuant to U.S.S.G. § 5K1.1, as there is nothing in the record to indicate that the government asked the court for such a reduction, as required by section 5K1.1.
 
 VI.
 
 19
 Theno's final issue can be dealt with summarily. He contends that his detention by Milwaukee police on an unrelated matter made it difficult to prepare his defense and prejudiced the judge against him, thus depriving him of a fair trial. However, Theno did not seek a continuance, and has not pointed to anything that occurred during the trial that would lead us to believe that his contention has merit.
 
 VII.
 
 20
 For the foregoing reasons, Theno's conviction and sentence are affirmed.
 
 
 
 *
 The Honorable Charles W. Joiner, Senior United States District Judge for the Eastern District of Michigan, sitting by designation