983 F.2d 1069
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Charles E. COLEMAN, Defendant-Appellant.
 No. 92-5454.
 United States Court of Appeals, Sixth Circuit.
 Jan. 5, 1993.
 
 Before BOYCE F. MARTIN, J.D., and MILBURN, Circuit Judges, and WELLFORD, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Defendant Charles E. Coleman appeals his conviction on a two-count indictment charging him with attempting to provide a prohibited object to an inmate at a Federal Correctional Institute ("FCI") in violation of 18 U.S.C. § 1791(a)(1) and attempting to possess cocaine with intent to distribute in violation of 21 U.S.C. § 846. On appeal, the sole issue is whether the district court erred in denying defendant's motion for judgment of acquittal by determining that sufficient evidence existed to support a conviction. For the reasons that follow, we affirm.
 
 I.
 A.
 
 2
 In May of 1991, Troutter, an inmate incarcerated at the Federal Correctional Institute at Memphis, Tennessee, approached defendant Coleman, a prison guard, and asked him if he would be willing to bring a package into the prison for $2,000. Coleman told Troutter that he would think about it and get back with him. Subsequently, Coleman agreed to make the transaction. Troutter told him that the package would contain marijuana and possibly cocaine and that Coleman would be paid $2,000.
 
 
 3
 After the Federal Bureau of Investigation ("FBI") received information that one of the prison guards was bringing drugs into the prison for an inmate, the FBI began an undercover investigation. It arranged for a meeting between Coleman and an undercover agent who was to act as Coleman's contact in order that Coleman could receive the $2,000 and the contraband. FBI Special Agent Mark Gant was the undercover officer, using the name of James Garner.
 
 
 4
 Troutter contacted Coleman to give him the room number and telephone number at the La Quinta Inn on Airways Boulevard in Memphis where defendant was to meet Agent Gant for the money and the drugs. The FBI set up a surveillance of the meeting which took place on May 23, 1991, and was able to make video and audio tapes of the meeting.
 
 
 5
 During the meeting between Coleman and Agent Gant, Coleman asked whether Gant was an FBI agent and whether he was going to be "thrown down and arrested" as a result of this meeting. J.A. 37. At no time did Coleman specifically ask Agent Gant for the money. However, Agent Gant handed defendant the money and asked, "you going to count this? Are we square?" Defendant's response was, "yea, we're square." J.A. 47. Defendant counted the money and laid it on a table. Agent Gant then handed the package of cocaine to Coleman who wrapped a rubber band around it and placed it on the table. Defendant had a bag on the table, but he did not place the cocaine or the money in the bag. Shortly thereafter, other FBI agents entered the room and arrested Coleman. At the time the agents entered the room, Coleman was standing by the exit door, and the money and cocaine were lying on the table.
 
 
 6
 After his arrest, Coleman gave two statements to the FBI. On May 23, 1991, the day he was arrested, Coleman admitted to the FBI that the meeting at the La Quinta Inn had been set up by Troutter and that he had accepted the $2,000 in payment in order to take a little less than half a kilogram of cocaine into the prison. He also admitted it was going to take several trips to take the drugs in, and it would not be very difficult because guards were not searched as they entered the prison. Defendant also advised the FBI that he had received $1,000 in April to take nine ounces of marijuana into the prison for Troutter. In addition, he stated that he knew it was against prison policy to bring such packages into the prison. In a second statement given to the FBI on May 24, 1991, Coleman once again stated that he was going to bring the drugs he received during the May 23, 1991, meeting into the prison and that it would take several trips to bring that amount in.
 
 B.
 
 7
 On June 20, 1991, defendant Coleman was charged in a two-count indictment with attempting to provide a prohibited object, cocaine, to an inmate of the FCI at Memphis, Tennessee, in violation of 18 U.S.C. § 1791(a)(1), and attempting to possess cocaine with intent to distribute in violation of 21 U.S.C. § 846. Trial in this matter began on November 12, 1991. At the close of the government's proof, defendant made a motion for judgment of acquittal pursuant to Federal Rule of Civil Procedure 29 arguing that insufficient evidence existed to support a conviction. The district court took the motion under advisement until the conclusion of all the proof and subsequently denied the motion. The jury returned a guilty verdict on both counts on November 14, 1991. The defendant was subsequently sentenced to sixty months imprisonment followed by four years of supervised release. Judgment was entered on February 26, 1992. This timely appeal followed.
 
 II.
 A.
 
 8
 In United States v. Pennyman, 889 F.2d 104, 106 (6th Cir.1989), we succinctly set forth the appropriate standard of review for a district court's denial of a motion for judgment of acquittal made pursuant to Fed.R.Crim.P. 29:
 
 
 9
 The reviewing court determines "whether after viewing the evidence in the light most favorable to the prosecution any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." United States v. Gallo, 763 F.2d 1504, 1518 (6th Cir.1985), cert. denied, 475 U.S. 1017, 106 S. Court 1200, 89 L.Ed.2d 314 (1986) (emphasis in original) (quoting Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d, 560 (1979)). The test for denial of a judgment of acquittal pursuant to Fed.R.Crim.P. 29 is the same. See United States v. Holloway, 731 F.2d 378, 381 (6th Cir.), cert. denied, 469 U.S. 1021, 105 S.Ct. 440, 83 L.Ed.2d 366 (1984) ("[W]e must view the evidence and all the reasonable inferences in the light most favorable to the government. If the evidence is such that a reasonable mind might fairly find guilt beyond a reasonable doubt, the denial of defendant's motion for acquittal must be affirmed." (citations omitted). Whether the evidence is direct or circumstantial, the test is the same. Gallo, 763 F.2d at 1518.
 
 
 10
 See also United States v. Beddow, 957 F.2d 1330, 1334 (6th Cir.1992). Moreover, we will reverse a judgment for insufficiency of the evidence only if the judgment is unsupported by "substantial and competent evidence upon the record as a whole." Beddow, 957 F.2d at 1334 (quoting United States v. Stone, 748 F.2d 361, 363 (6th Cir.1984), cert. denied, 111 S.Ct. 71 (1990)).
 
 
 11
 Defendant argues that there exists insufficient evidence to convict him for attempting to provide a prohibited object to an inmate of a federal correctional institute and for attempting to possess cocaine with intent to distribute. In order to convict a defendant of attempt to commit a crime, the government must prove two elements: (1) that the defendant intended to engage in the criminal activity and, (2) that the defendant performed an overt act in furtherance of the criminal activity. United States v. Loehr, 966 F.2d 201, 203 (6th Cir.) petition for cert. filed, 61 U.S.L.W. 3194 (Sept. 8, 1992) (No. 92-426); Pennyman, 889 F.2d at 106.
 
 
 12
 In denying defendant's motion for judgment of acquittal, the district court focused on the second element and determined that there were a number of overt acts that a reasonable juror could have found were substantial steps committed in furtherance of the substantive crimes. Among the acts the district court cited were: (1) that defendant met with the agent in the motel room according to prearranged plans in order to receive the money and the drugs; (2) that he discussed at some length the transaction, (3) that he took possession of and counted the money; (4) that he took possession, at least momentarily, of the cocaine and wrapped it in a rubber band; and (5) that when asked by the agent, "are we square?," he responded, "Yeah, we're square." The district court found that the statement, "yeah, we're square," indicated "at least possibly to a reasonable juror that the transaction had been made." J.A. 54.
 
 
 13
 Defendant argues that at the time he met with Agent Gant, he lacked the requisite intent to commit each of the offenses for which he was convicted. According to defendant, the fact that he was nervous and apprehensive about the meeting indicated that he did not intend to consummate the criminal activity. Defendant notes that he asked the agent several times if he was an FBI agent, and he also asked Gant whether he was going to be "thrown down and arrested" as a result of the meeting. J.A. 37. This argument is meritless.
 
 
 14
 As the government correctly contends, there exists ample evidence to find that Coleman intended to follow through with his criminal activity. Defendant agreed with Troutter to bring the drugs into the prison for $2,000 prior to meeting with Gant; he attended the meeting and later confessed to FBI agents that he accepted the $2,000 offered to him by Gant and that he was going to take the cocaine into the prison. Finally, as the district court noted, it is significant that Coleman responded, "yeah, we're square" when asked by Gant, "are we square?" Simply because he was nervous and afraid of being caught does not negate his intention to follow through with his planned criminal activity. When viewing the evidence as a whole and in the light most favorable to the prosecutor, any reasonable trier of fact could have determined beyond reasonable doubt that defendant possessed the requisite intent to commit the crimes for which he was convicted.
 
 B.
 
 15
 Defendant next argues that the evidence is insufficient to support a determination that he committed an overt act in furtherance of the substantive offenses. He argues that the meeting at the hotel between himself and Agent Gant simply represented mere preparations or preliminary discussions toward the completion of the substantive crimes at issue.
 
 
 16
 The overt act requirement is fulfilled where a "substantial step" is committed in furtherance of the criminal activity. Pennyman, 889 F.2d at 106. "[A] substantial step is more than mere preparation, yet may be less than the last act necessary before the actual commission of the substantive crime." United States v. Sutton, 961 F.2d 476, 478 (4th Cir.), cert. denied, 113 S.Ct. 171 (1992) (quoting United States v. Delvecchio, 816 F.2d 859, 861 (2d Cir.1987)). Moreover, " '[t]he defendant's objective conduct, taken as a whole, must unequivocally corroborate the required subjective intent to purchase or sell actual narcotics.' " Pennyman, 889 F.2d at 106 (quoting United States v. Pennel, 737 F.2d 521, 525 (6th Cir.1984)). "The degree of a defendant's performance of a substantial act in furtherance of the illegal activity is a factual issue to be resolved according to the circumstances of each particular case." Loehr, 966 F.2d at 203.
 
 
 17
 In support of his argument, defendant relies on United States v. Joyce, 693 F.2d 838 (8th Cir.1982). In Joyce, the defendant flew from Oklahoma City, Oklahoma, to St. Louis, Missouri, where he met an undercover officer who was posing as a cocaine seller. The officer took the defendant to a hotel where the defendant asked to see the cocaine. The officer left the hotel and returned later with a duct tape wrapped plastic package said to contain approximately one kilogram of cocaine which he handed to the defendant. The defendant, however, returned the package to the officer stating that he could not see the cocaine. The defendant twice asked the officer to unwrap the cocaine so he could observe it, and when he failed to receive satisfaction from the officer, the defendant stated that "he would not deal with Officer Jones no matter how good the cocaine was." Id. at 840. At no time did the defendant produce the approximately $20,000 agreed upon as the price for the cocaine. The Eighth Circuit concluded that
 
 
 18
 there was clearly insufficient evidence to establish that he [defendant] engaged in conduct constituting a "substantial step" toward the commission of the crime of possession of cocaine with the intent to distribute. Whatever intention Joyce had to procure cocaine was abandoned prior to the commission of a necessary and substantial step to effectuate the purchase of cocaine.
 
 
 19
 Id. at 841. The Eighth Circuit found it significant that while the defendant had the opportunity and ability to purchase the cocaine, he "unambiguously refused either to produce his money or to purchase the cocaine." Id. at 842. The court concluded, "[t]his effectively negated the government's effort to consummate the sale." Id. Finally, the Eighth Circuit did not consider the few seconds in which the defendant actually possessed the package of cocaine as fulfilling the requirement of a substantial step. The court explained that
 
 
 20
 [i]t should be noted that Joyce's momentary possession of the wrapped and sealed package containing a kilogram of cocaine is not the same possession that Joyce was charged with attempting. Joyce was indicted and tried for attempting to purchase and hence possess a pound of cocaine with the intent to distribute, not with attempting momentarily to possess a kilogram of cocaine belonging to Officer Jones.
 
 
 21
 Id. at 842, n. 3.
 
 
 22
 Defendant argues that he, like the defendant in Joyce, committed no substantial step in furtherance of the substantive crime. He notes that he expressed fear and apprehension about the transaction, that he laid the money and the cocaine on the table, and that at the time he was arrested, he was standing near the exit door. Furthermore, he argues that his "momentary handling the money and the drugs simply is not actual or constructive possession, [sic] is not an overt act. It is mere preparation." Defendant's Brief at 12.
 
 
 23
 This case, however, is distinguishable from Joyce. The Eighth Circuit in Joyce found it significant that no money was produced and no cocaine was purchased. In this case, both money and cocaine were exchanged from the agent's possession to defendant's possession. Defendant argues that because he put the money and cocaine down on the table, the exchange constituted only a "momentary possession" like that in Joyce. However, unlike the defendant in Joyce, Coleman did not return the cocaine or the money to Agent Gant nor did he state unequivocally that he would not deal with Agent Gant. Instead, as previously discussed, he stated, "yeah, we're square." Unlike in Joyce, any reasonable juror in this case could have concluded from defendant's behavior together with his statement that the transaction was completed or substantially completed.
 
 
 24
 Defendant's argument is also flawed in another respect. Defendant appears to be arguing that in order for the overt act requirement to be met, defendant must actually or constructively possess the drugs at issue. However, in Pennyman, we held that possession of drugs is not necessary in order to meet the requirement of an overt act for attempted possession with intent to distribute. 889 F.2d at 107. In Pennyman, the FBI recorded two conversations between the defendant and one Larry White. In the first conversation, the defendant told White that he wanted to buy a certain amount of cocaine. The conversation also indicated that each was involved in distributing cocaine rather than simply buying cocaine for personal use. In their second conversation, the defendant informed White that he had the "balance for what I owe you" for the cocaine. Id. at 106. We upheld defendant's conviction despite the fact that there was no proof that defendant actually purchased or possessed narcotics. See 889 F.2d at 106-07. In so holding we explained that
 
 
 25
 [a] defendant's failure to physically possess drugs or "sham" drugs is given little weight for two reasons. First, 21 U.S.C. § 846 is read so as to minimize technical obstacles to enforcement of drug laws. Reeves, 794 F.2d at 1104. Secondly, collateral acts by another person that may have prevented defendant from consummating the deal to purchase cocaine do not negate his subjective intent to possess.
 
 
 26
 Id. at 107. See also United States v. Campbell, 652 F.2d 760, 763 (8th Cir.1981) (per curiam) ("possession ... is not an element of the crime of attempting to introduce contraband into a federal correctional institution.").
 
 
 27
 Similarly, actual or constructive posession of drugs was unnecessary in United States v. Williams, 704 F.2d 315 (6th Cir.1983), cert. denied, 464 U.S. 991 (1983), where the defendant was convicted for attempted possession of cocaine. In Williams, while police officers were searching an individual's residence, the defendant phoned and told an officer who had answered the phone that he wanted to buy some "snow." Id. at 316. The officer told him to come over and pick it up. Upon his arrival at the residence approximately fifteen to forty-five minutes later, the defendant was arrested and found to possess $3,400 in cash and a handgun. We determined that "in the absence of police intervention," the defendant would have consummated the substantive crime. Id. at 321. We then held that the defendant's conduct was sufficient to meet the requisite of an overt act. Id. We distinguished Joyce on the ground that in Joyce, defendant's conduct constituted an affirmative abandonment of any intent to consummate the substantive offense whereas in this case, no such affirmative abandonment existed. Id.
 
 
 28
 Defendant Coleman seeks to distinguish his case from Williams by noting that in Williams, the defendant arrived with a weapon and money whereas Coleman brought nothing with him. This is a meaningless distinction because the type of transaction involved in Williams differed from the type of transaction in this case. In this case, Coleman was not at the meeting to purchase cocaine, rather he was there to receive cocaine and money, both of which were produced at the meeting.
 
 
 29
 Finally, defendant argues that "[b]ut for the premature arrest," he may have refused to deal with Agent Gant and left the room as did the defendant in Joyce. Defendant's brief at 11. However, as we stated in Loehr, a case in which the defendant was convicted of attempted money laundering,
 
 
 30
 the government is under no obligation to wait until the sale was actually completed before intervening. That is of course true for if the sale has been completed it is no longer mere attempt. Something less than a consummated sale suffices to prove an attempt provided it is a substantial step toward completion.
 
 
 31
 Loehr, 966 F.2d at 203 (citing United States v. Cea, 914 F.2d 881, 888 (7th Cir.1990), cert. denied, 113 S.Ct. 281 (1992)). Similarly, in this case the government was under no obligation to wait until the transaction was actually completed before intervening. Once the transaction was completed, defendant could very well have been charged with actual possession with intent to distribute, not simply attempted possession with intent to distribute. Sutton, 961 F.2d at 478 ("the only step remaining here was an actual exchange of the money and the marijuana, which would have constituted the final act necessary for the commission of the substantive offense of possession of marijuana.").
 
 III.
 
 32
 For the reasons stated, the district court is AFFIRMED.