42 F.3d 1389
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee
v.
Scott David MILLER, Defendant-Appellant
 No. 93-2620.
 United States Court of Appeals, Sixth Circuit.
 Dec. 2, 1994.
 
 Before: KENNEDY, RYAN, and BATCHELDER, Circuit Judges.
 PER CURIAM.
 
 
 1
 The defendant pleaded guilty to possession of a precursor chemical with intent to manufacture a controlled substance. At sentencing, the district court increased the defendant's offense level based on uncharged conduct under the "relevant conduct" provision of the United States Sentencing Guidelines [U.S.S.G.]. See U.S.S.G. Sec. 1B1.3. The defendant contends this was error. We affirm.
 
 
 2
 * At the time of the offenses involved in this case, methcathinone, an analogue of methamphetamine, was a Schedule II controlled substance.[1] Ephedrine is the precursor chemical for methcathinone. In his plea agreement, the defendant stipulated several facts regarding his involvement in the manufacture of methcathinone. The pertinent stipulations are summarized as follows.
 
 
 3
 On October 18, 1991, the defendant ordered twelve bottles of ephedrine pills from Nationwide Purveyors, a pharmaceutical company, for the purpose of using the ephedrine to manufacture methcathinone. Several days later, the defendant accepted and paid for the shipment of ephedrine and then delivered the ephedrine to Dean Michael Grimes so that Grimes could manufacture the methcathinone.
 
 
 4
 On November 10, 1991, the defendant and Grimes together manufactured methcathinone in a hotel room. The next day, the defendant ordered twenty-four bottles of ephedrine pills from Nationwide Purveyors with the intent of aiding Grimes in the manufacture of methcathinone.
 
 
 5
 On November 13, 1991, in the course of searching Grimes's apartment, federal and state narcotics officers seized a methcathinone laboratory. As the officers approached the apartment, they observed the defendant leaving the premises in his car. The officers stopped the defendant, and a consensual search of the car revealed various items associated with the manufacture and use of methcathinone, including amounts of ephedrine and methcathinone.
 
 
 6
 After the search, the United Parcel Service [UPS] contacted the defendant to arrange delivery of the shipment from Nationwide Purveyors. The defendant told UPS to return the shipment to the sender.
 
 II
 
 7
 Guideline Sec. 2D1.1 governs the calculation of the offense level in this case. See U.S.S.G. Sec. 2D1.1 ("Unlawful Manufacturing, Importing, Exporting, or Trafficking...."). In part, application note 12 to that section provides, "Types and quantities of drugs not specified in the count of conviction may be considered in determining the offense level. See Sec. 1B1.3(a)(2) (Relevant Conduct)." U.S.S.G. Sec. 2D1.1, comment. (n. 12). U.S.S.G. Sec. 1B1.3(a)(2) requires the district court to determine the base offense level on the basis of "all acts and omissions ... that were part of the same course of conduct or common scheme or plan as the offense of conviction" if the offenses are "of a character for which Sec. 3D1.2(d) would require grouping of multiple counts." U.S.S.G. Sec. 3D1.2(d) requires grouping of drug offenses.
 
 
 8
 In calculating the defendant's offense level, the district court included the amount of ephedrine the defendant ordered on November 11, 1991, as relevant conduct. The defendant offers two arguments why this was error. Neither has merit.
 
 
 9
 * The defendant first argues that the government failed to present sufficient proof at sentencing and that the district court therefore erred in considering the defendant's conduct "relevant" under U.S.S.G. Sec. 1B1.3. In the sentencing phase of a trial, the government need only prove sentencing factors by a preponderance of the evidence, not beyond a reasonable doubt. United States v. Silverman, 889 F.2d 1531, 1535 (6th Cir.1989). The commentary to U.S.S.G. Sec. 1B1.3 provides that, in determining relevant conduct in drug cases, a court may hold a defendant accountable for all quantities of drugs "with which he was directly involved...." U.S.S.G. Sec. 1B1.3, comment. (n. 2); see also U.S.S.G. Sec. 1B1.3, comment. (n. 1); United States v. Ledezma, 26 F.3d 636, 645-46 (6th Cir.), cert. denied, 115 S.Ct. 349 (1994).
 
 
 10
 We find that the November 11 placement of an order for ephedrine was properly considered relevant conduct, because the defendant intended to possess the ephedrine for the purpose of manufacturing methcathinone and performed a substantial act in furtherance of the intended crime. See United States v. Pennyman, 889 F.2d 104, 106 (6th Cir.1989). The defendant stipulated his intent, on November 11, 1991, to manufacture methcathinone from the ephedrine he ordered that day and apparently concedes that his conduct was "relevant conduct" under U.S.S.G. Sec. 1B1.3, that is, "part of the same course of conduct or common scheme or plan" as the offense of conviction. The defendant disputes only the finding that he took a substantial step towards possession of the ephedrine. This argument is unavailing.
 
 
 11
 Under the law of attempt, which we consult here, whether the defendant's conduct constituted a substantial step towards commission of the crime is heavily dependent on the circumstances of the case. United States v. Loehr, 966 F.2d 201, 203 (6th Cir.), cert. denied, 113 S.Ct. 655 (1992). A substantial step is something more than mere preparation, yet less than the actual commission of the crime. Id. When considered in context, it must be strong, objective corroboration of the defendant's intent to engage in the criminal activity, but need not be incompatible with innocence. United States v. Mims, 812 F.2d 1068, 1077-79 (8th Cir.1987).
 
 
 12
 The defendant stipulated that he placed a phone call to Nationwide Purveyors on November 11, 1991, ordered twenty-four bottles of ephedrine, and thereby caused the ephedrine to be shipped to him through UPS. Furthermore, the stipulations reveal that the defendant had, at least once before, placed an order, received the ephedrine, and used the ephedrine to manufacture methcathinone with Grimes. Under these circumstances, the ordering of the ephedrine was a substantial step towards completion of the crime.[2]
 
 B
 
 13
 Second, the defendant contends that in refusing delivery of the ephedrine, he voluntarily and completely abandoned his intent to commit the crime. At the time the defendant refused delivery of the ephedrine, the police had already discovered his collaboration with Grimes in the manufacture of methcathinone. While the defendant claims his refusal was due to a change of heart, the evidence is susceptible to the interpretation that fear of detection motivated the refusal. See United States v. Bailey, 834 F.2d 218, 227 (1st Cir.1987); see also United States v. Dworken, 855 F.2d 12, 22 (1st Cir.1988); United States v. DeRosa, 670 F.2d 889, 894 (9th Cir.), cert. denied, 459 U.S. 993, and cert. denied, 459 U.S. 1014 (1982). Therefore, the district court's inclusion of the additional amounts of ephedrine was not clearly erroneous.
 
 III
 
 14
 Based on the foregoing, the defendant's sentence is AFFIRMED.
 
 
 
 [1]
 Methcathinone became a Schedule I substance as of May 1, 1992. See 57 Fed.Reg. 18824 (May 1, 1992) (temporary scheduling); 58 Fed.Reg. 53404 (October 15, 1993) (final scheduling)
 
 
 [2]
 The defendant also suggests that a verbal agreement to purchase a substance can never be a "substantial step" towards possession. This is not so. See United States v. Tate, No. 92-2515, 1994 WL 54404. at * 3 (6th Cir. Feb. 22, 1994), cert. denied, 114 S.Ct. 2756 (1994); Pennyman, 889 F.2d at 106-07; see also United States v. Jonsson, 15 F.3d 759, 761-62 (8th Cir.), cert. denied, --- S.Ct. ----, 1994 WL 314047 (1994)