83 F.3d 423
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Miriam Juana FONTAO, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Eric PAGANI-GALLEGO, aka Erik Pagani-Gallego, Defendant-Appellant.
 Nos. 95-1084, 95-1086.
 United States Court of Appeals, Sixth Circuit.
 April 18, 1996.
 
 Before: NORRIS and SILER, Circuit Judges; and GODBOLD, Senior Circuit Judge.*
 GODBOLD, Senior Circuit Judge.
 
 
 1
 Eric Pagani-Gallego and Miriam Juana Fontao were jointly tried and convicted of conspiracy to possess with intent to deliver cocaine, 21 U.S.C. § 846, attempt to possess with intent to distribute cocaine, 21 U.S.C. § 841(a)(1), and aiding and abetting, 21 U.S.C. § 2. Pagani-Gallego and Fontao timely filed notices of appeal and challenge their convictions on several grounds. We affirm the convictions.
 
 A. Denial of Right of Confrontation
 
 2
 Fontao's Sixth Amendment right of confrontation was not violated by the admission of the confession of Pagani-Gallego, who was not a witness at her trial. After the arrest of Pagani-Gallego police interrogated him and extracted a confession which was admitted at Fontao's trial through the testimony of Agent Kacerosky. Before the confession was read to the jury, the U.S. Attorney stated:
 
 
 3
 Now, I want to tell you something right now. Pursuant to an objection by counsel concerning names of individuals, I don't want you to name any individual by name.
 
 
 4
 The confession, redacted to omit Fontao's name, was read to the jury:
 
 
 5
 He indicated to me that he--he acknowledged that the transaction that had occurred he knew to involve cocaine. He indicated that he expected to be paid money for his participation in the scheme And he indicated that other individuals in Miami were involved in the scheme.
 
 
 6
 In closing argument the U.S. Attorney summarized the content of Pagani-Gallego's confession:
 
 
 7
 He gives detailed information identifying people by name who are involved in this transaction with him.
 
 
 8
 Fontao did not object to the U.S. Attorney's statements or the admission of Kacerosky's testimony, or request a limiting instruction, so our review is limited to plain error.
 
 
 9
 The Sixth Amendment of the Constitution embodies the essential right of the accused in a criminal prosecution to have the opportunity to confront witnesses against her. In Richardson v. Marsh, 481 U.S. 200, 107 S.Ct. 1702, 95 L.Ed.2d 176 (1987), the Court restricted this right by holding that the admission of a nontestifying codefendant's confession which is redacted to eliminate all references to the defendant would not violate the right of confrontation if accompanied by the appropriate cautionary instruction. This circuit interpreted this rule as allowing the introduction of a redacted confession "even if the codefendant's confession becomes incriminating when linked with other evidence adduced at trial." U.S. v. DiCarlantonio, 870 F.2d 1058, 1062 (6th Cir.1989), cert. denied, 493 U.S. 933 (1989).
 
 
 10
 There was no reversible plain error. In light of the strength of the other evidence produced by the government, error, if any, was harmless.
 
 
 11
 Second, the court's refusal to allow Fontao time to obtain the income tax returns of Collazo, the government paid informant, did not violate her right of confrontation. On the last day of trial Fontao's attorney requested copies of Collazo's income tax returns. The district judge instructed Fontao that he did not intend to delay the trial, but if Fontao could retrieve the records without delay the records would be admissible. The U.S. Attorney informed Fontao that she would have to seek a court order or move for an adjournment of the trial to retrieve the records because retrieval would require approximately two weeks. She did not seek a court order or move for an adjournment. This inaction limits our review to plain error.
 
 
 12
 The district court did not commit plain error in refusing to delay the trial so Fontao could retrieve the records. The delay would have extended the trial, which was almost over, for two weeks. Fontao's counsel cross-examined Collazo about his payment from the government even though she did not have his tax returns.
 
 
 13
 Third, the refusal of the district court to order the disclosure of the PSR of Robert Hills, a cooperating defendant, did not violate Fontao's right of confrontation. Our review is limited to the clearly erroneous standard.
 
 
 14
 The court examined the PSR and did not find any relevant information. The court stated: "I have examined the Pre-Trial Services Report of Robert Hills. I find nothing in it of arguable relevance." The district court's refusal was not clearly erroneous.
 
 B. Sufficiency of the Evidence
 
 15
 Fontao challenges her conviction under 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2 on the ground that the government failed to prove every element of her offense beyond a reasonable doubt as required by In re Winship, 397 U.S. 358, 361, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970).
 
 
 16
 The government must prove two elements to convict a person of attempting to commit a cocaine offense: (1) the intent to engage in the possession with intent to distribute cocaine; and (2) the commission of an overt act which constitutes a substantial step toward the possession with intent to distribute cocaine. U.S. v. Pennyman, 889 F.2d 104, 106 (6th Cir.1989). Fontao asserts that the government failed to prove that she had intent to possess or did possess cocaine.
 
 
 17
 This challenge has no merit and sufficient evidence supports the conviction. Fontao contacted Collazo to obtain a cocaine supplier; she conducted two meetings in Miami where she discussed the quantity of drugs and the persons who would be involved in the sale of the cocaine; and she arranged to bring the buyers and sellers together. This evidence tends to prove that she intended to engage in the possession with intent to distribute cocaine and that she participated in overt acts which constituted a substantial step toward her possession with intent to distribute.
 
 C. Prosecutorial Misconduct
 
 18
 The following are statements of the U.S. Attorney made in opening remarks and in closing argument:
 
 
 19
 [OPENING REMARKS]
 
 
 20
 Ladies and gentlemen, unfortunately, you will find out coke is not involved in this deal. I cannot bring the Pope in before you and have the Pope testify about the drug deal he did. I had to bring in people who were involved in the drug deal, drug dealers, people who admitted readily, I was involved in this drug deal, who admitted readily, I am going to get something in return for my truthful testimony, someone who admitted that, if I lie, it's all out the window and I go to jail for a long time.
 
 
 21
 [CLOSING ARGUMENT]
 
 
 22
 But in reality, even though everybody knows they did it, even though we know the person confessed, they still have the right to come in here and have an attorney come in and try to argue that they didn't do it.
 
 
 23
 * * *
 
 
 24
 * * *
 
 
 25
 [The reasonable doubt standard is] not this impossible burden. Jurors have made it every single day. People have been found guilty every single day.
 
 
 26
 These statements did not violate Fontao's right of due process and did not constitute prosecutorial misconduct. They were not egregious or continuous. U.S. v. Bess, 593 F.2d 749 (6th Cir.1979). At most the comments constituted harmless error which does not provide a ground for reversal.
 
 D. Agreement with Informant
 
 27
 The government agreed to pay Collazo, the informant, 25% of the money seized from the investigation, resulting in a payment of approximately $145,000. The admission of Collazo's testimony did not violate the constitutional rights of Pagani-Gallego.
 
 
 28
 The Fifth Circuit held in U.S. v. Cervantes-Pacheco, 826 F.2d 310, 315 (5th Cir.1987), cert. denied, 484 U.S. 1026 (1988), that "an informant who is promised a contingent fee by the government is not disqualified from testifying in a federal criminal trial." Following this rule the government had the authority to compensate Collazo. Although the amount of the payment is great, the influence the payment had on the testimony goes to credibility and not admissibility.
 
 
 29
 E. Denial of Due Process by Pre-Indictment Delay
 
 
 30
 Pre-indictment delays did not deny Fontao or Pagani-Gallego of their right to due process. Fontao's offense occurred between January 10, 1988 and February 5, 1988, but she was not indicted until approximately 60 months later, on January 13, 1993. Pagani-Gallego was arrested on February 2, 1988, but the indictment was not returned against him until January 20, 1993. Appellants argue that this delay caused three essential witnesses to be unavailable: Agent Bilis, Johnny Ace Smith and Willie Lopez.
 
 
 31
 In U.S. v. Lovasco, 431 U.S. 783, 97 S.Ct. 2044, 52 L.Ed.2d 752 (1977), the Court required the defendant to show both (1) substantial prejudice to his right to a fair trial and (2) an intentional delay by the government to obtain a tactical advantage before a due process violation was present. The defendant must demonstrate "in a 'definite and not speculative' manner how the loss of the witness or other evidence was prejudicial." U.S. v. Loud Hawk, 816 F.2d 1323, 1324 (9th Cir.1987).
 
 
 32
 Fontao and Pagani-Gallego did not prove either prong. The only evidence of the prejudice was purely speculative. Fontao admitted that she did not know "what Agent Bilis would have testified to." Tr. V at 18. No proffer was made to the court of the proposed testimony. "Mere assertions that the testimony of a missing witness might have been useful ... [do] not constitute the proof of prejudice required.... If the 'actual content' of the lost testimony was not before the court, it could not determine whether that testimony would have been beneficial or detrimental to the defendant." Loud Hawk, 816 F.2d at 1325.
 
 
 33
 The appellants did not establish that the government gained a tactical advantage by the delay or that there was any due process violation.
 
 F. Denial of Right to Fair Trial
 
 34
 The district court did not err in admitting evidence of prior bad acts under Fed.R.Evid. 404(b). Fontao and Pagani-Gallego challenge two statements admitted in evidence. First, Agent Kacerosky testified:
 
 
 35
 Q: Were you personally aware of any other investigations that Mr. Collazo [the government informant] had been involved in prior to the investigation in question?
 
 
 36
 A: Yes. As I stated, there was one other, my recollection is there was one other active investigation that was ongoing at that time. That investigation involved the use of Go-Fast vessels that would be used, which would mean very fast speed boats that were being used to smuggle cocaine, or were intended to be used to smuggle cocaine from the Bahamas to South Florida. The investigation became centered on the number of people. There was an overlap and some of the subjects in that case were some of the subjects in this case.
 
 
 37
 Second, the government presented evidence that Pagani-Gallego offered to launder the money obtained after the buy and that Pagani-Gallego was highly capable of laundering the money due to past acts of money laundering.
 
 
 38
 The Sixth Circuit employs a three-part test in determining the admissibility of evidence under Rule 404(b): (1) the government must introduce evidence so that a reasonable jury could conclude that the act occurred; (2) the subsequent act must be probative of a material issue other than character; and (3) the probative value of the evidence must not be substantially outweighed by the danger of unfair prejudice. Fed.R.Evid. 403, 404.
 
 
 39
 Our standard of review is limited to plain error because the evidence was introduced without objection. The admission of this testimony did not result in plain error. The evidence fits into the exceptions in Rule 404(b). A court may admit evidence of other wrongs "if those other crimes or acts are relevant to intent or knowledge which are elements of the crime charged." U.S. v. Lash, 937 F.2d 1077, 1087 (6th Cir.1991), cert. denied, 502 U.S. 949 (1991). Pagani-Gallego's offer to launder money was part of the continuing pattern of illegal activity. The evidence concerning Fontao went to prove intent. The district court did not commit plain error.
 
 G. Explanation of Drug Code Words
 
 40
 Agent Edward Kacerosky testified as an expert and identified the meaning of code words used in the drug trade. This testimony did not invade the province of the jury because the average juror is not capable of understanding the meaning of code words used in the drug trade.
 
 
 41
 This circuit established the well-recognized rule in U.S. v. Pearce, 912 F.2d 159, 163 (6th Cir.1990), cert. denied, 498 U.S. 1093 (1991), that "[l]aw enforcement officers may testify concerning the methods and techniques employed in an area of criminal activity and to establish 'modus operandi' of particular crimes. Knowledge of such activity is generally 'beyond the understanding of the average layman.' " (quoting U.S. v. Espinosa, 827 F.2d 604, 611 (9th Cir.1987), cert. denied, 485 U.S. 968 (1988)).
 
 
 42
 This testimony was beyond the knowledge of the average juror and was proper.
 
 
 43
 AFFIRMED.
 
 
 
 *
 The Honorable John C. Godbold, United States Circuit Judge for the Eleventh Circuit, sitting by designation